IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
WINDOWS OVER HARLEM RESTAURANT
& CATERING, INC. and EVA L. FRAZIER

                            Plaintiffs             __10_ CIV._0876__ ( PGG )

              - against -

WILLIE WALKER, ERIC MILLER, WILLIAM L.     **JURY TRIAL**
HILL JR., NEW YORK STATE OFFICE OF      **DEMANDED**
GENERAL SERVICES and EMPIRE STATE
DEVELOPMENT CORPORATION

                            Defendants
------------------------------------------------------------x

**COMPLAINT FOR VIOLATION OF TITLE 42, CHAPTER 21, SUBCHAPTER 1 § 1981 and § 1983 , 18 U.S.C. § 1038 (b), 18 U.S.C. § 1961 and § 1962 (c) (d), SECTION 240.30(1) NYPL AND FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS, TORTIOUS INTERFERENCE WITH AN EXISITING CONTRACT AND BREACH OF CONTRACT**

       Plaintiffs, WINDOWS OVER HARLEM RESTAURANT & CATERING, INC.

(hereinafter "WINDOWS") and EVA L. FRAZIER (hereinafter "EVA FRAZIER"),

by their attorney, RICHARD C. CUNHA, complaining of the Defendants, WILLIE

WALKER (hereinafter "WALKER"), ERIC MILLER (hereinafter "MILLER"),

WILLIAM L. HILL JR. (hereinafter "HILL"), STATE OF NEW YORK OFFICE OF

GENERAL SERVICES (hereinafter "OGS") and EMPIRE STATE DEVELOPMENT

CORPORATION (hereinafter "ESDC") aver on knowledge as to themselves and their

own acts and on information and belief as to all other matters, as follows:

# JURISDICTION AND VENUE

    1.  The Court has subject matter jurisdiction under Title 42, Chapter 21,

Subchapter 1 § 1981 (equal rights), 18 U.S.C. § 1038 (b) (false information and hoaxes),

18 U.S.C. § 1961 (pattern of racketeering), § 1962 (c) (damages) and (d) (conspiracy), and 18 U.S.C. § 1331 (federal question) as this action arises under U.S.C. Title 42, Chapter 69 § 5305 (ESDC'S receipt of federal funds). The Court has supplemental subject matter jurisdiction of the pendent State law claims under 28 U.S.C. § 1367.

Venue is proper because WILLIE WALKER, ERIC MILLER, WILLIAM L. HILL JR., NEW YORK STATE OFFICE OF GENERAL SERVICES and EMPIRE STATE DEVELOPMENT CORPORATION reside and are found in this district within the contemplation of 28 U.S.C. § 1391 (b) and (c) and as provided by New York State Executive Law Article 15-A.  All transgressions as alleged occurred in the State of New York, by and through WILLIE WALKER, ERIC MILLER, WILLIAM L. HILL JR., OGS and ESDC. Venue is properly before the United States District Court in the Southern District of New York.

## THE PARTIES

2.      Plaintiff WINDOWS is designated a New York State Certified Minority Women-owned Business Enterprise (hereinafter "MWBE"), majority-owned (80%) by Plaintiff EVA FRAZIER, President and Chief Executive Officer. Plaintiff EVA FRAZIER is a retired New York City school teacher. WINDOWS leases the third floor of the Adam Clayton Powell Jr. Harlem State Office Building located at 163 West 125th Street, New York, New York 10027 under a State-approved MWBE contract and derives a principle source of its income from special events that it coordinates on-site and which often occur on weekends during both daytime and evening hours.

3.      Defendants WALKER and MILLER are the on-site Building Manager and Assistant Building Manager, respectively, of the Adam Clayton Powell Jr. Harlem State

Office Building located at 163 West 125th Street, New York, New York 10027 and

administered by the NEW YORK STATE OFFICE OF GENERAL SERVICES.

Upon information and belief, Defendant HILL is the immediate supervisor of WALKER

and MILLER and also an employee of the NEW YORK STATE OFFICE OF GENERAL

SERVICES.  Upon information and belief, Defendant WALKER is the owner of

"AVAATAR," a privately-held enterprise not named as a defendant is this action.

     4.     Defendant NEW YORK STATE OFFICE OF GENERAL SERVICES

manages and leases real property, designs and builds facilities, contracts for goods,

services and technology, and delivers a wide array of support services. The Office of

General Services (OGS) operates under requirements set forth in various New York State

laws. OGS is the administrator of the Adam Clayton Powell, Jr. Harlem State Office

Building at 163 West 125[th]Street, New York, New York 10027 where the Plaintiffs

WINDOWS and EVA FRAZIER are a party to the Comptroller's Contract No. X002425

for Operation of the Food Services Facilities at Adam Clayton Powell, Jr. Harlem State

Office Building, New York, New York 10027, dated June 9, 2005 and marked Exhibit

(A).

     5.     Defendant EMPIRE STATE DEVELOPMENT CORPORATION is a

New York State corporation with its principal executive offices at Albany, Buffalo and

New York, New York, and it conducts business both directly and through a network of

regional offices throughout New York State. Empire State Development Corporation

Division of Minority and Women-owned Business Enterprise is responsible for

establishing program mandates, certification criteria, contract opportunities, technical

assistance and financial resources to MWBEs. Empire State Development Corporation

receives federal funds under 42 U.S.C. 5305.

## NATURE OF ACTION

6.     It is the policy of New York State to maximize opportunities for the participation of New York State business enterprises, including Minority and Women-owned Business Enterprises (hereinafter "MWBEs") as contractors, subcontractors, and suppliers on its procurement contracts. Pursuant to Article 15-A, § 311-A, Paragraph 1 and 2, and § 313, Paragraph 1 of the New York State Executive Law, "there is hereby established within the department of economic development an office of the minority and women-owned business enterprise statewide advocate. The statewide advocate shall be appointed by the commissioner with the advice of the small business advisory board as established in section one hundred thirty-three of the economic development law and shall serve in the unclassified service of the director. The statewide advocate shall be located in the Albany empire state development office. The advocate shall act as a liaison for minority and women-owned business enterprises (MWBEs) to assist them in obtaining technical, managerial, financial and other business assistance for certified businesses and applicants. The advocate shall investigate complaints brought by or on behalf of MWBEs concerning certification delays and instances of violations of law by state agencies.[1] Further, "the director shall promulgate rules and regulations that provide measures and procedures to ensure that certified businesses shall be given the opportunity for meaningful participation in the performance of state contracts and to identify those state contracts for which certified businesses may best bid to actively and affirmatively promote and assist their participation in the performance of state contracts

---

[1]New York State Executive Law, Article 15-A, § 311-A, Paragraph 1 and 2

so as to facilitate the award of a fair share of state contracts to such businesses."[2]

7.      In 2006, the Defendants OGS and ESDC 1) effectively breached their contract with WINDOWS and EVA FRAZIER and 2) through their agents, WALKER and MILLER, acting specifically under instructions from HILL and OGS, engaged in multiple acts of tortious interference with business activities of WINDOWS and EVA FAZIER and 3) innumerable episodes of personal harassment of WINDOWS' staff and EVA FRAZIER, 4) that resulted in a substantial loss of sales, 5) distressed EVA FRAZIER emotionally and financially, and 6) rendered WINDOWS and EVA FRAZIER unable to meet the expenses of running a business and pay federal and state taxes.

Among other things, a) OGS imposed unilateral modifications effective February 1, 2007 that are in breach of the contractual agreement dated January 25, 2005, between OGS and WINDOWS, b) $10,000 of OGS overcharges to WINDOWS, arbitrary and capricious changes by agents WALKER and MILLER, and HILL, OGS and ESDC that severely effected WINDOWS' and EVA FRAZIER'S ability to conduct restaurant and catering services and caused considerable losses of sales and revenue during 2006, 2007, 2008 and 2009, c) failure of agents WALKER and MILLER, acting under the supervision of HILL, OGS and ESDC to properly manage and effectuate the overall maintenance of facilities of the physical plant pertinent to the ongoing operation of WINDOWS' and EVA FRAZIER'S business, and d) innumerable occasions of retaliatory acts perpetrated by agents WALKER and MILLER, acting under the supervision of HILL, OGS and ESDC against WINDOWS and EVA FRAZIER.

8.      The Defendants' economic coercion of WINDOWS and EVA FRAZIER

---

[2] New York State Executive Law, Article 15-A, § 313, Paragraph 1

contradicts the mandates of Defendant ESDC Division of Minority and Women

Business Development, in violation of New York State Executive Law Article 15-A,

§ 311-A and 313.[3]  The discriminatory and competitively crippling treatment inflicted

upon WINDOWS and EVA FRAZIER by Defendants WALKER, MILLER, HILL, OGS

and ESDC extends to all levels, a policy of what has become increasingly egregious over

the past several years.

It has become apparent that WINDOWS and EVA FRAZIER could achieve

substantial business profits if Defendants complied with their public service obligations.

However, Defendants WALKER and MILLER, acting under the supervision of HILL,

OGS and ESDC, so targeted WINDOWS and EVA FRAZIER, personally, with a truly

pernicious assault aimed directly at WINDOWS and EVA FRAZIER so as to destroy any

opportunity for economic success. In fact, it can be stated, unequivocally, that the

Defendants' actions were and are clearly conspiratorial and intended to move EVA

FRAZIER to become emotionally distraught, declare bankruptcy and shut down

WINDOWS. It was and continues to be the goal of the Defendants to have WINDOWS

and EVA FRAZIER simply give up any fight to enforce the original contract before its

expiration on February 12, 2010 and allow the Defendants to begin proceedings to evict

WINDOWS and EVA FRAZIER from the premises, therefore a Temporary Restraining

Order is intensely time sensitive.

9.      WALKER, MILLER, HILL, OGS and ESDC'S conduct has unfairly and

artificially capped WINDOWS' and EVA FRAZIER'S market share, and constrained

the corporation and her from expanding to reach even the minimum efficient levels of

scale necessary to compete with other New York City restaurants and caterers. As a

---

[3] New York State Executive Law Article 15-A, § 310

result, WINDOWS and EVA FRAZIER continue to be subjected to the almost daily acts

of harassment that expose WINDOWS and EVA FRAZIER to OGS'S and ESDC'S

economic coercion, administered through WALKER and MILLER, under the direct

supervision and official sanction of HILL. Thus WINDOWS and EVA FRAZIER

have been and continue to be forced to submit to artificial limits the Defendants place on

their growth and development. With WINDOWS' and EVA FRAZIER'S opportunity to

compete, the cycle continues while the Defendants flaunt their ability to deny the

equitable right of EVA FRAZIER to operate WINDOWS, a MWBE, without tortious

interference.

## FACTUAL BACKGROUND

9.      In a letter dated August 6, 2007, Plaintiffs WINDOWS and EVA

FRAZIER complained to the Honorable Andrew Cuomo, Attorney General, State of New

York that Defendants WALKER and MILLER had violated OGS Contract X002425. On

April 8, 2008 Plaintiffs WINDOWS and EVA FRAZIER submitted a document of

complaints to Commissioner John Egan, Office of General Services.[4] The document was

in response to a letter from Commissioner Egan, dated February 5, 2008, and expressed

WINDOWS' and EVA FRAZIER'S concerns about their inability to function and carry

out the mission of their contract with OGS.[5] Further, WINDOWS and EVA FRAZIER

articulated with specificity their concern to fully execute the contract without interference

and hoped the document of complaints presented to Commissioner Eagan would lead to

---

[4] Administrator of Adam Clayton Powell Jr. State Office Building
[5] Comptroller's Contract No. X002425 for Operation of the Food Services Facilities

resolution of the explained issues. References were made to a meeting between WINDOWS' shareholders, EVA FRAZIER and Commissioner Eagan held on January 24, 2008 and a following letter dated February 5, 2008 that spoke to samples of documentation provided by WINDOWS' shareholders and EVA FRAZIER that supported complaints of tortious interference with a contract. WINDOWS' executives and EVA FRAZIER concluded that the actions of ESDC, OGS and its agents violated the terms of the contract and hoped that the submitted complaints would bring clarity and consideration so they could prevail in remedying their situation.

Although WINDOWS and EVA FRAZEIR were broke and the business was failing, EVA FRAZIER and the shareholders believed that a direct appeal to the OGS Commissioner would stop the harassing and insidious behavior of WALKER, MILLER, HILL, OGS and ESDC. To follow is an account of the debilitating circumstances created by the Defendants to bring down WINDOWS and EVA FRAZIER.

11.    The investment in new equipment for WINDOWS was listed as the primary issue. As a restaurateur and caterer, food preparation is EVA FRAZIER'S principal means of earning a living. The current equipment is outdated and has required a considerable outlay of WINDOWS' sales revenues for its continuing maintenance. WINDOWS' contractual agreement with OGS includes a clause wherein WINDOWS agreed to a $26,000 capital improvement. In the meantime, the equipment is in a constant state of disrepair and often breaks down at the most critical times. Downtime leads to event postponements and cancellations, and although OGS covers 80% of the costs, their policy appears to be one of continuing repair and not replacement with new equipment.

12.    In a conspired effort to shackle WINDOWS' progress, agents WALKER

and MILLER, acting at times under instructions from HILL, OGS and ESDC, engaged in a pattern of racketeering, beneficial to Defendant's WALKER and/or to his enterprise, AVAATAR, that tortiously interfered with WINDOWS' planned catered events. For example, WALKER and MILLER, acting in concert, a) deliberately delayed time-stamping EVA FRAZIER'S Special Event Forms requests, at times, to give AVAATAR events an unfair advantage, b) deliberately instituted unwarranted building-wide "security alerts" on the days and evenings of WINDOWS' events arising from bomb threat hoax perpetrated by Defendants WALKER and MILLER, c) deliberately eliminated and/or substantially reduced or shut down services at times immediately preceding WINDOWS' events, such as turning off all running water to the men's and women's restroom facilities and, d) fabricated new rules and regulations for the sole purpose of thwarting and frustrating the dedicated efforts of EVA FRAZIER to effectively operate WINDOWS as a successful enterprise, e) engaged in a pattern of racketeering activity and conspiracy that caused direct financial harm to WINDOWS and EVA FRAZIER, and f) made innumerable disparaging, abusive racially-, gender- and age-biased verbal statements made directly to EVA FRAZIER and WINDOWS' shareholders by agents WALKER and MILLER echoing their intent to carry out OGS and ESDC'S unwritten policy of discriminatory treatment and destroy her business, her health and drive her from the premises.

13.     The conduct of WALKER and MILLER, HILL, OGS and ESDC is inexcusable and is not isolated. WALKER and MILLER, HILL, OGS and ESDC elsewhere sabotaged WINDOWS' events, engaged in "administrative extortion" and demonstrated a malevolent determination to use all of their bureaucratic force and power

on WINDOWS and EVA FRAZIER to ruin her restaurant and catering business.

14.     In other underhanded efforts to ruin WINDOWS' and EVA FRAZIER'S

business and to fully realize their objective, WALKER, MILLER, HILL, OGS and ESDC

engaged in an insidious scheme to mislead EVA FRAZIER into erroneously believing

that they would address her concerns enumerated in her letter to Commissioner Egan

dated April 8, 2008 and marked Exhibit (B).

This duplicitous strategy served a broader purpose than simply preventing

WINDOWS and EVA FRAZIER from competing with other New York area

restaurateurs and caterers; it was a smoke-screen for profiteering by State employees,

WALKER and MILLER.

OGS and ESDC were inundated with written requests from EVA FRAZIER and

others acting on her behalf to take steps to resolve the problems complained of in the

document of complaints submitted to Commissioner Egan. Aside from telephone calls

and letters, numerous emails were transmitted to OGS administrators and a face-to-face

appeal was made to the MWBE Executive Director of Defendant ESDC. ESDC did not

respond at all but OGS responded with assurances that all matters would be addressed to

the satisfaction of all parties concerned. Yet the discriminatory acts of harassment

continued and increased.

Then, in what is believed to be no less than a retaliatory act, WALKER,

MILLER, sanctioned by HILL, OGS and ESDC, deliberately undercut WINDOWS'

restaurant and catering business by offering longtime WINDOWS' customers such as

JACK & JILL, INC., AMERICAN LEGION, INC. and 100 BLACK MEN, INC., just to

name a few, banquet and meeting facilities on other floors of the Adam Clayton Powell

Jr. Harlem State Office Building at rates that were up to 50% below what WINDOWS charged.

To further cripple WINDOWS and EVA FRAZIER, those groups who rented space directly through OGS building managers WALKER and MILLER were permitted to employ outside caterers, in direct violation of an OGS original contractual provision with WINDOWS and EVA FRAZIER that cited the WINDOWS' "right of first refusal" for all catering jobs within the Adam Clayton Powell Jr. Harlem State Office Building. Consequently, this policy ruined sales by deterring and impeding serious event planners who looked to WINDOWS' and EVA FRAZIER'S restaurant and catering business as an appropriate venue wherein to hold their social events. The direct injuries to WINDOWS and EVA FRAZIER are reflected by the substantially decreased revenues and profits that would have been earned from such bookings.

15.    WALKER, MILLER, HILL, OGS and ESDC implemented this plan for the sole purpose of ejecting WINDOWS and EVA FRAZIER from the premises on February 12, 2010, the last day of the current contract. The Defendants' behavior exemplifies unbridled expressions of discrimination, gender bias, racketeering and government-sanctioned corruption and cronyism endemic among managerial staff of the Adam Clayton Powell State Office Building and responsible administrators of OGS and ESDC, all of whom have failed to discharge faithfully their public responsibilities.

For the past three years, WALKER and MILLER, sanctioned by HILL, OGS and ESDC have drained EVA FRAZIER'S business and personal resources, delayed her ability to grow and develop her business and deterred WINDOWS and EVA FRAZIER from achieving the revenues and profits possible in the Harlem business renaissance.

11

To further exemplify their blatant racketeering, Defendants WALKER and MILLER, in an open display of hubris, invited prospective bidders, in violation of OGS Rules of Procedure, to appear unannounced on August 28, 2009 to inspect the restaurant and catering premises and inform the WINDOWS' staff that they had already "cut a deal with WALKER to take-over the restaurant facility on February 13, 2010." Not only did this incident further intimidate EVA FRAZIER, it also caused EVA FRAZIER extreme distress and led her to believe that she would not, with certainty, remain in possession of the premises after February 12, 2010.

But then, with an unmitigated sense of mockery, and after WINDOWS and EVA FRAZIER lodged an official complaint against the illegal visitors, OGS, in evidence of their collusion, sent their *inspection team* to "investigate" the incident knowing that the prospective bidders had appeared at the behest of WALKER, MILLER, HILL and OGS, in violation of OGS pre-bid provisions. As expected, nothing came of the investigation.

16.     Upon information and belief, WALKER and HILL each is a one-third voting Member of the New York State Office of General Services bid selection and award team or some facsimile thereof.

17.     On August 28, 2009, OGS transmitted a letter via facsimile to WINDOWS and EVA FRAZIER wherein was stated the following:

> "Please be advised that, given your firm's continued delinquencies in meeting its financial obligations under the referenced Agreement (Controller's Contract No. X002425 for Operation of the Food Service Facilities at Adam Clayton Powell, Jr. State Office Building, New York, NY), the Office of General Services (OGS) has no current intention to renew this Agreement upon the expiration of its original five-year term on February 11, 2010.
>
> OGS will be issuing a Request for Proposal in the near future to secure a replacement contractor, to begin operations on February 12, 2010. You

should be aware that unless Windows Over Harlem Restaurant & Catering, Inc. were to completely eliminate their outstanding balance owed to OGS of approximately $50,000, it would be found to be a nonresponsible firm and, as such, would be ineligible to bid on the new contract.

Further, you are put on notice that OGS intends to collect all sums due from Windows Over Harlem Restaurant & Catering, Inc. if they are not satisfied by the end of its contract term, by whatever means necessary, including litigation. Please feel free to contact Franklin Hecht at (518) 474-4546 to get a full accounting of all amounts currently owed by Windows Over Harlem Restaurant & Catering, Inc."

Finally, on November 4, 2009, EVA FRAZIER, unable to pay the WINDOWS' annual licensing renewal fee to the New York State Liquor Authority, applied for a temporary 24-hour permit to accommodate a client who would provide much needed revenue for her battered and struggling business. The State of New York Liquor Authority's Temporary 24 hour application form consisting of 7 pages required the signature of the authorized on-site OGS agent, Defendant WALKER, on page 2, line 4. The application was given to Defendant WALKER on Tuesday, November 4, 2009 at approximately 10 a.m. Defendant WALKER refused to sign the application and did so refuse to do on three other occasions throughout the day when EVA FRAZIER, physically weary, pleaded with him to do so. In the interim, EVA FRAZIER'S client became increasingly impatient and threatened to move the event elsewhere. Under the pressure of this incident of intentional infliction of emotional distress, EVA FRAZIER, on November 8, 2009 sustained a debilitating stroke that rendered her vision impaired.

## EFFECT OF DEFENDANTS' CONDUCT and INACTION

18.    WALKER and MILLER, HILL, OGS and ESDC's unlawful conduct has caused and will continue to cause substantial harm to WINDOWS and EVA FRAZIER.

13

But for WALKER, MILLER, HILL, OGS and ESDC'S acts, WINDOWS and EVA FRAZIER would be able to compete for restaurant and catering business on competitive merit, both in Harlem and throughout the New York area, bringing customers and event planners lower prices, quality food service and greater freedom of choice to schedule their social affairs. The most egregious example is the bomb threat hoax that has given the Defendants the authority to maintain indefinitely a Category 3 building-wide alert in effect. This misused and unnecessarily invoked protective measure prevents WINDOWS' from attracting customers and tourists simply because underground parking is no longer available nor may visitors bring cameras into the building. See letter dated May 26, 2009 marked Exhibit (C)..

19.     WALKER, MILLER, HILL, OGS and ESDC'S discriminatory acts of tortious interference are within the purview of the Federal court and have a direct, substantial, and reasonably foreseeable effect on the ability of WINDOWS and EVA FRAZIER to meet successfully the terms of the contractual agreement, unlock the growth and development potential and free WINDOWS and EVA FRAZIER from the clutches of a pernicious, vindictive and vengeful administrative policy.

20.     WALKER, MILLER, HILL and OGS'S violative conduct underscores the negligence of Defendant ESDC in not adhering to the legislative principles of New York State Executive Law Article 15-A, which is to help minorities and women in business and will continue to cause substantial harm to WINDOWS and EVA FRAZIER in the New York restaurant and catering trades, in the form of artificially constrained market share, lost profits and increased costs of capital. Additionally, that same conduct has had, and will continue to have, a direct, substantial, and reasonably foreseeable effect

on WINDOWS' and EVA FRAZIER'S ability to attract special event customers unless the Court acts to enjoin WALKER, MILLER, HILL, OGS and ESDC to cease and desist and to make whole WINDOWS and EVA FRAZIER who have suffered more than one million dollars of lost business revenues from January 2006 through January 2010.

# CLAIMS FOR RELIEF

## CLAIM 1

### Violation of Title 42 Chapter 21 Section 1981 and 1983

21.     WINDOWS and EVA FRAZIER reallege and incorporate by reference the averments set forth in paragraphs 1 through 22.

22.     Section 1981 of Title 42 protects individuals from discrimination based on race in making and enforcing contracts. Section 1983 of Title 42 states "every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law…"

WHEREFORE, by the above and other acts and omissions, Defendants have caused and continue to cause Plaintiff EVA FRAZIER right to the pursuit of life, liberty and happiness and thus caused substantial economic harm and considerable anguish and frustration inflicting damages in an amount to be determined at trial but not less than one million ($1,000,000.00) dollars, plus such other and further relief as the trier of fact determines is just and reasonable. In addition, Plaintiffs EVA FRAZIER seek punitive

damages in an amount to be determined at trial, but not less than ten million ($10,000,000.00).

## CLAIM 2

## Violation of 18 U.S.C. § 1038 (b)

23.    Plaintiffs WINDOWS and EVA FRAZIER restate and reallege each of the preceding paragraphs as if specifically set forth at length here and incorporate by reference the averments set forth in paragraphs 1 through 32.

24.    By the above act, Defendants WALKER and MILLER, sanctioned by Defendants HILL, OGS and ESDC did knowingly constrain and continues to constrain the opportunities available to WINDOWS and EVA FRAZIER to benefit from the increasingly huge tourist market visiting Harlem. The maintenance of a Category 3 building-wide alert arising from a false report of terrorism has injected a permanent para-military aura around the WINDOWS restaurant operation and eliminated customer underground parking privileges in a commercial center (125th Street) where public parking is extremely limited.

WHEREFORE, by the above acts, Defendants have caused and continue to cause Plaintiffs WINDOWS and EVA FRAZIER harm, including the tortious interference with the Plaintiffs' business operations, and damages in an amount to be determined at trial but not less than one million ($1,000,000.00) dollars, plus such other and further relief as the trier of fact determines is just and reasonable.  In addition, Plaintiffs WINDOWS and EVA FRAZIER seek punitive damages in an amount to be determined at trial, but not less than ten million ($10,000,000.00) dollars.

# CLAIM 3

## Tortious Interference with a Contract and
## Violation of 18 U.S.C. § 1961 and § 1962 (c) (d)

25.     Plaintiffs WINDOWS and EVA FRAZIER restate and reallege each of the

preceding paragraphs as if specifically set forth at length here and incorporate by

reference the averments set forth in paragraphs 1 through 28.

30.     By the above and other acts, Defendants did knowingly and intentionally act and

conspire to keep Plaintiffs' business constrained by and through Defendants WALKER

and MILLER'S repeated and continuous acts of racketeering, harassment and

discrimination, commencing and continuing a pernicious and corrupt administrative

policy of Defendants OGS and ESDC that is without basis in law or fact, and committed

the within acts and omissions without excuse or justification, yet within the course of a

conspiracy as set forth herein.

26.     At all times relevant hereto, Defendants knew and/or should have known of

Plaintiffs' concerns as expressed in the document of complaints dated April 8, 2008 and

through numerous letters, emails and telephone messages transmitted directly to OGS and

during a face-to-face discussion with MWBE Executive Director, ESDC.

27.     By the above and other acts and omissions, 1) Plaintiffs had, maintained, and

desired to maintain business relationship with OGS and ESDC; 2) Defendants acting in

concert and conspiracy knew and should have known of the Plaintiffs' business

concerns above, and elsewhere, *supra*, intentionally interfered with Plaintiffs' business

relations; 3) the above and other acts and omissions by Defendants were perpetrated upon

Plaintiffs WINDOWS and EVA FRAZIER with malice, and utilized dishonest, unfair

and improper means through the exercise and failure to exercise Defendants' public

powers, duties and responsibilities; and 4) Plaintiffs were harmed and continue to be

harmed thereby, including *still* being unable to conduct a profitable business due to the

ongoing failure of Defendants to replace equipment of Plaintiffs' businesses and provide

a supportive administrative policy as specified under MWBE guidelines.

WHEREFORE, by the above and other acts and omissions, Defendants have

caused and continue to cause Plaintiffs WINDOWS and EVA FRAZIER harm, including

the tortious interference with the Plaintiffs' business operations, and damages in an

amount to be determined at trial but not less than one million ($1,000,000.00) dollars,

plus such other and further relief as the trier of fact determines is just and reasonable.  In

addition, Plaintiffs WINDOWS and EVA FRAZIER seek punitive damages in an amount

to be determined at trial, but not less than ten million ($10,000,000.00) dollars.

## CLAIM 4

## Breach of Contract

28.    WINDOWS and EVA FRAZIER reallege and incorporate by reference

the averments set forth in paragraphs 1 through 20.

29.    The unilateral modifications that were imposed on or about November 20,

2006, effective February 1, 2007, violate the terms set forth on page 5, item number 15

of the Agreement dated January 26, 2005, which states, "This Agreement constitutes the

entire Agreement between the parties hereto and no statement, promise, condition,

understanding, inducement or representation, oral or written, expressed or implied, which

is not contained herein shall be binding or valid and this Agreement shall not be

changed, modified or altered in any manner except by an instrument in writing executed

by both parties hereto." See Exhibit (A).

WHEREFORE, by the above and other acts and omissions, Defendants have caused and continue to cause Plaintiff WINDOWS economic harm and Plaintiff EVA FRAZIER considerable anguish and mental pain and suffering, inflicting damages in an amount to be determined at trial but not less than one million ($1,000,000.00) dollars, plus such other and further relief as the trier of fact determines is just and reasonable. In addition, Plaintiffs WINDOWS and EVA FRAZIER seek punitive damages in an amount to be determined at trial, but not less than ten million ($10,000,000.00).

## CLAIM 5

## **Harassment and Intentional Infliction of Emotional Distress**

30.     WINDOWS and EVA FRAZIER reallege and incorporate by reference the averments set forth in paragraphs 1 through 24.

31.     By the above and other acts, Defendants did knowingly and intentionally act to keep Plaintiffs' business constrained by and through arbitrary, capricious and pernicious acts of aggravated harassment based on EVA FRAZIER'S gender, age and race through their repeated and blatant failure to address and resolve issues relevant to the operation of WINDOWS without basis in law or fact, and committed the within acts and omissions without excuse or justification, yet within the course of a conspiracy as set forth herein.

32.     The above and other acts and omissions by Defendants were knowingly, negligently and intentionally committed, in a conspiracy, and designed to intentionally, recklessly, negligently and wantonly inflict severe emotional distress upon Plaintiff EVA FRAZIER.

33.     The above and other acts and omissions by Defendants constitute the knowing and negligent and intentional infliction of severe emotional distress upon Plaintiff EVA FRAZIER, and did so inflict great emotional distress upon Plaintiff EVA FRAZIER.

WHEREFORE, by the above and other acts and omissions, Defendants have caused and continue to cause Plaintiff EVA FRAZIER harm, including great emotional distress, and damages including administrative fees in an amount to be determined at trial but not less than one million ($1,000,000.00) dollars, plus such other and further relief as the trier of fact determines is just and reasonable.  In addition, Plaintiffs WINDOWS and EVA FRAZIER seek punitive damages in an amount to be determined at trial, but not less than ten million ($10,000,000.00) dollars.

WHEREFORE, WINDOWS and EVA FRAZIER pray this court:

A.     Find that WILLIE WALKER, ERIC MILLER, WILLIAM L. HILL JR., NEW YORK STATE OFFICE OF GENERAL SERVICES and EMPIRE STATE DEVELOPMENT CORPORATION have breached their contractual agreement with WINDOWS and EVA FRAZIER and are wrongfully engaging in acts of discrimination, harassment, infliction of emotional distress and tortious interference with a contract and award WINDOWS and EVA FRAZIER treble damages of fifteen million ($15,000,000) dollars.

B.     Find that WILLIE WALKER, ERIC MILLER, WILLIAM L. HILL JR., NEW YORK STATE OFFICE OF GENERAL SERVICES and EMPIRE STATE DEVELOPMENT COPROATION have discriminatorily targeted WINDOWS and EVA FRAZIER in violation of New York State Executive Law Article 15-A , pursuant thereto,

award WINDOWS and EVA FRAZIER treble damages for her resulting loss profits in an amount to be proven at trial.

      C.     Find that WILLIE WALKER, ERIC MILLER, WILLIAM L. HILL JR., NEW YORK STATE OFFICE OF GENERAL SERVICES and EMPIRE STATE DEVELOPMENT CORPORATION has intentionally interfered with valuable business relationships of WINDOWS and EVA FRAZIER to their economic detriment and award WINDOWS and EVA FRAZIER damages in an amount to be proven at trial for their resulting losses, as well as punitive damages, as permitted by law.

      D.     Grant injunctive relief and restraint prohibiting WILLIE WALKER, ERIC MILLER, WILLIAM L. HILL JR., NEW YORK STATE OFFICE OF GENERAL SERVICES and EMPIRE STATE DEVELOPMENT CORPORATION from acting to terminate WINDOWS' and EVA FRAZIER'S leasehold and order an immediate stay of the New York State Office of General Services bid process and/or the granting of any rights/permissions by New York State Office of General Services to a replacement vendor to contract or lease the restaurant and catering facilities currently under our management and situated on the greater part of the third floor of the Adam Clayton Powell Jr. Harlem State Office Building located at 163 West 125th Street, New York, New York 10027 at any time on or after February 12, 2010 until WILLIE WALKER, ERIC MILLER, WILLIAM L. HILL JR., NEW YORK STATE OFFICE OF GENERAL SERVICES and EMPIRE STATE DEVELOPMENT CORPORATION appear before this Court to explain and justify their conduct pertaining to the allegations complained of herein.

      E.     Award WINDOWS and EVA FRAZIER such other, further and different

relief as may be necessary or appropriate to restore and maintain their competitive

position in the New York City restaurant and catering market.

      F.     Award WINDOWS and EVA FRAZIER attorneys fees and costs of

this action.

Dated: February 3, 2010          RESPECTFULLY SUBMITTED,


_____

RICHARD C. CUNHA ESQ.
253 Wilbur Avenue
Swansea, Massachusetts 02777-2621
Telephone: (508)-642-9911
Fax: (508) 300-2424

EXHIBIT "A"

# SECTION A - INTRODUCTION

1.  *Introduction*

The New York State, Office of General Services (OGS or State) is requesting proposals for the management and operation of the cafeteria and banquet facility located on the 3rd floor, the Kiosk located on the 1st floor in the Lobby and vending machines in the Basement at the Adam Clayton Powell Jr. S.O.B. in New York, New York. **(hereinafter sometimes referred to as the "Food Service Operation".**

2.  *Goal*

The intention of this Request for Proposals (RFP) is to award the Adam Clayton Powell Jr. S.O.B. food service contract to a food service operator who offers innovation and convenience. Our vision for this facility is to provide a variety of quality hot and cold food and beverages at reasonable prices. Also, the food service operator must provide a catering service, which is community oriented and able to serve a wide variety of affairs, banquets, and vending to meet the needs of the customers.

OGS has the statutory authority to enter into this contract for the purpose of providing the State a equitable return along with efficient and customer driven quality food and beverages at a competitive price to the State employees, guests and visitors of this food service operation. This facility shall be operated under the most stringent sanitary standards. The successful awardee must provide: supervision as required by the Issuing Office; auditable accounting; a menu plan that is customer driven; quality control; marketing and all supporting services.

This "Request for Proposals" (RFP) has been prepared for the sole purpose of soliciting proposals from as many qualified companies as possible to provide the food services for a five (5) year term, the term may be renewed at the State's option for an additional period or periods, not to exceed in the aggregate an additional five (5) years.

3.  *Scope*

This Request for Proposal ("RFP") contains information and instructions to enable interested Contractors to prepare their proposals. It provides specifications for cleaning, repairs and maintenance of equipment, current hours of operation and certain other requirements and restrictions.

The Office of General Services encourages innovative proposals for concept food services, banquet catering, vending and other related services that will appeal to all employees and visitors. Proposers should carefully consider a wide variety of services, including but not limited to, services for persons with disabilities, elderly visitors, State employees, commuters, college students, community people and business travelers. Proposers should also consider dietary concerns of the customers.

Proposals must also provide detailed information to include pricing, portion sizes, food quality standards, vending selections and company policies in similar operations.

In addition to the annual contract fee bid, the Successful Proposer will also be responsible for reimbursing the State for twenty percent (20%) of the State's Costs incurred for the preventive maintenance of, and repairs to, the food service equipment listed in Appendix F hereto.

. Bidders are solely responsible for costs of all capital improvements approved by the State, which the Contractor elects to make at this facility. All capital improvements immediately become the property of OGS.

OGS will provide heat, hot and cold water, air conditioning, rubbish disposal, grease trap cleaning, kitchen exhaust cleaning and integrated pest management for the currently configured space at no charge.

## 4.    RFP Goals

One of the goals of this RFP is to award a contract to a bidder who is able to focus on presenting quality and reasonably priced dining to tenant State Agency employees and visitors. Also, the successful proposer must be able to cater affairs and banquets for local community organizations and customers whenever requested.

## 5.    Definition of Terms:

Issuing Office - shall mean the New York State Office of General Services, Bureau of Food Services.

Operator or Contractor- shall mean the successful awardee of a contract pursuant to this RFP.

Request for Proposals - Also referred to through out this document as RFP.

The State - shall mean the New York State Office of General Services.

Commissioner - Wherever the term Commissioner is used, it shall be understood to refer to the Commissioner of General Services or his duly authorized representative.

Capital Improvements - shall generally mean additions to or costs incurred that improve or increase the value of the food service operation's real property, fixtures or facilities, and shall not include normal maintenance and upkeep or purchase of small equipment or supplies. The qualification of an item as a capital improvement shall be subject to the prior written approval of the Issuing Office, as determined in its sole discretion.

"Proposer" or "Bidder" - shall mean any person, partnership, firm, corporation or other authorized entity submitting a proposal to the State pursuant to this RFP.

### 6. Rules of Construction

Words of the masculine and feminine genders shall be deemed and construed to include the neuter gender. Unless the context otherwise indicates, the singular number shall include the plural number and vice versa, and words importing persons shall include corporations and associations, including public bodies, as well as natural persons.

The terms "hereby," "hereof," "hereto," "herein," "hereunder," and any similar terms, as used in this RFP, refer to this RFP.

### 7. Issuing Office

This Issuing Office for purposes of this RFP shall be as follows:

NYS Office of General Services
Bureau of Food Services
Empire State Plaza, Concourse Rm 130
Albany, NY  12242
Office: (518) 474-1606
Fax:   (518) 402-5222
Vincent W. Brewer, Issuing Officer

## 8.    Pre-Bid Requirements

### a.    Pre-Bid Conference

The Pre-Bid Conference will be held at the  Adam Clayton Powell Jr. State Office Building on Wednesday, September 8, 2004, on the third floor in the Executive Suite of the Cafeteria, from 10:30 a.m. until 12:30.    **ATTENDANCE AT THE ON-SITE PRE-BID CONFERENCE IS MANDATORY. BIDDERS DELINQUENT BY MORE THAN THIRTY (30) MINUTES WILL BE DISQUALIFIED FROM SUBMITTING PROPOSALS. YOU MUST CONFIRM YOUR ATTENDANCE AT THE PRE-BID CONFERENCE BY CALLING (518) 474-1606 NO LATER THAN 4:00 P.M. ON TUESDAY, SEPTEMBER 7, 2004.**  You must limit the number of attendees to three (3) persons.

The purpose of this conference is to solicit questions concerning the RFP and to conduct a site visitation of the facility.  The site visit will give you the opportunity to see the facility first-hand and help in preparing your proposals.

Questions during the conference will be permitted, however, official answers may be deferred and provided subsequently in writing by the Issuing Office and distributed to all proposers represented at the Pre-Bid Conference.

Questions after the conference may be submitted in writing to the Issuing Office no later than Wednesday, September 15, 2004.  All questions submitted in writing (unless they are of such a nature that it relates to proprietary information) will be answered in writing and distributed to all proposers represented at the Pre-Bid Conference by no later than September 20, 2004.

Faxed inquiries will be allowed, however, confirmation of receipt of any faxed material is the sole responsibility of the bidder.

**Proposals will NOT be accepted by fax.**

## 9.    *Key Event Dates*

| | |
|---|---|
| RFP Release | August 23, 2004 (Monday) |
| Mandatory Pre Bid Conference | September 8, 2004 (Wednesday) |
| Closing Date for Written Inquiries | September 15, 2004 (Wednesday) |
| Submission of Proposals | September 29, 2004 (Wednesday) |
| Begin Contract Operations | February 11, 2005 (Saturday) |
| Facility Open for Business | February 14, 2004 (Monday) |

# SECTION B

# ADMINISTRATIVE INFORMATION

## 1.    *Instructions*

This section contains instructions for preparing and submitting a proposal to the New York State Office of General Services.  To ensure that your proposal is fully responsive to the requirements, please read this section and the Section F detailing Evaluation Criteria.  Proposers should review and become familiar with all the appendices including the Minority and Women Owned Business Enterprise Program. **Attendence at the on-site pre-bid conference is mandatory. All proposals will be scored by a numerical evaluation.**

## 2.    *Submission of Proposal*

a.    The information contained in your proposal shall be indicated by a Table of Contents and presented in the following order:

    1.    Cover Letter – Indicate that the instructions of this document were understood, and state that should the contract be awarded to your company, you would be prepared to begin operation of this facility on February 12, 2005.

    2.    Experience – Provide a brief, but detailed, summary of the experience of your firm, describing the type of experience it has with similar facilities and how long it has been providing this type of service.  Include a listing of all past and current facilities which were under your firm's operation and/or management.  Resumes should be submitted for all key personnel, especially any proposed site manager for the subject facility.

    3.    Operational Plans – this would include plans for cleaning, trash removal, waste reduction and recycling, equipment, preventive maintenance and replacement, staffing, menu and pricing and staffing.

    4.    Financial Stability – Submit documentation sufficient to establish the relative financial stability of your firm.  The firm's two most recent available Annual Financial Reports and Income Tax Returns would be acceptable.

    5.    Proposed Fee (See Appendix B for Proposal bid form).

    6.    All required completed forms located at the appendices hereto.

b.    Proposers are directed to the Bidder's Checklist attached as Appendix C hereto for a comprehensive list of all documentation required submitting a proposal.

## 3.    Instructions for submission

Please complete one (1) original and five (5) exact copies of the proposal with all of its supporting documents, sending all to:

**Division of Financial Administration**
**NYS Office of General Services**
**Corning Tower, 40th Floor Bid Room**
**Empire State Plaza**
**Albany, NY  12242**
**Issuing Officer:  Vincent Brewer**
**Proposal ID #1171**
**Attention:  Janet Fennell**

Proposals must be signed by a partner, corporate officer or other person authorized to commit its organization to all provisions of the RFP and its proposals as submitted.  Proposals must be received on or before 12:00 noon on Wednesday, September 29, 2004.   Time will be determined by the clock at the 40TH Floor Bid Room.

**NO CONSIDERATION WILL BE GIVEN TO PROPOSALS RECEIVED AFTER THE ABOVE DATE AND TIME, UNLESS NO OTHER CONFORMING BIDS ARE TIMELY RECEIVED.** Submitters mailing a proposal must allow sufficient mail delivery time to ensure receipt of their proposal no later than the specified time on the date due.

The proposal documents must be submitted by hand delivery, overnight carrier or certified mail in a package showing the following information on the outside:

        a)        Bidder's complete name and address
        b)        Proposal ID #1171
        b)        Contract Food Services - Proposal Due  September 29, 2004

## 4.    Proposal Submission

The Proposal shall for one hundred twenty (120) days after the submission of proposals date be a firm and irrevocable offer of the submitter to enter into and perform the contract for the herein Bureau of Food Services.  A Proposal shall continue to remain an effective offer subsequent to such one hundred twenty (120) day period until either tentative award of the contract by the Issuing Office is made or withdrawal of the proposal in writing by the submitter.  Tentative award of the contract shall consist of written notice to that effect by the Issuing Office to the successful Contractor, who shall thereupon be obligated to execute a formal contract for the operation on the terms defined in the RFP.

## 5.    Content of Proposals

To be considered responsive, a prospective Contractor must submit a complete proposal that satisfies and addresses all material requirements stated in the RFP.  **A PROPOSAL WHICH FAILS TO**

**CONFORM WITH ALL MATERIAL REQUIREMENTS WILL BE CONSIDERED NON-RESPONSIVE AND WILL BE REJECTED.**

The successful awardee's proposal and a copy of this RFP shall be made a part of any contract resulting from this RFP. Therefore, the proposals must be signed by an individual, partner, corporate officer, or other person authorized to commit its organization to all provisions of the RFP and its proposal as submitted.

During the evaluation process, the content of each bid/proposal will be held in confidence and details of any bid/proposal will not be revealed (except as may be required under the Freedom of Information Law or other State law). The Freedom of Information Law provides for an exemption from disclosure for trade secrets or information the disclosure of which would cause injury to the competitive position of commercial enterprises. This exception would be effective both during and after the evaluation process.

Should you feel your firm's bid/proposal contains any such trade secrets or other confidential or proprietary information, you must submit a request to except such information from disclosure. Such request must be in writing, must state the reasons why the information should be accepted from disclosure and must be provided at the time of submission of the subject information.

**Requests for exemption of the entire contents of a bid/proposal from disclosure have generally not been found to be meritorious and are discouraged. Kindly limit any requests for exemption of information from disclosure to bona fide trade secrets or specific information, the disclosure of which would cause a <u>substantial</u> injury to the competitive position of your firm.**

## 6.    *Proposal Conformance*

Proposals must conform with the Standard clauses for all New York State contracts which is included as Appendix A attached hereto.

Proposers are required to utilize the Proposal Checklist found in Appendix C and submit a completed copy thereof with their proposal. Use of the Bidder's Checklist shall not preclude the Issuing Office from requesting information that is not included in the checklist, but is required in the RFP.

## 7.    Notification of Award

After the evaluation, all bidders offering proposals will be notified of the name of the successful Proposer. The bidder will be notified by mail that the submitted proposal has been selected. The original proposal, and any additions or deletions to the proposal, become part of the contract.

Public announcements or news releases pertaining to this contract shall not be made without prior approval from the Issuing Office.

The proposal shall be submitted with the understanding that the acceptance thereof in writing by the Commissioner of OGS shall be binding upon the Proposer. Execution of an agreement, which incorporates the terms of this RFP and bidder's proposal, with the approval of the State Comptroller and the Attorney General, shall constitute a contract between the Contractor and the State.

## 8.    No Collusion

By submission of a proposal hereto, the Proposer warrants that no person other than those expressly named therein has any interest in the awarding of a contract to the successful Proposer, that the proposal is in all respects fair and was prepared without collusion or fraud and that no officer or employee of the New York State Office of General Services has or shall have any financial interest in the performance of the contract or in the supplies, work or business to which it relates, or in any portion of the profits thereof.

## 9.    Proposal Exceptions

The Issuing Office will consider all requests to waive any proposal requirement. Bidders should be aware that a failure to obtain a waiver of any proposal requirement could result in disqualification from the bidding process.

Bidders wishing to obtain an exemption must contact the Issuing Office. Bidders unable to meet the requirements specified in this RFP shall identify the areas in which their proposal differs from the stated requirements. Any alternative proposed should be identified as such.

## 10.    Prime Contractor Responsibilities

The State will contract only with the successful bidder who is the Prime Contractor. The Issuing Office considers the Prime Contractor, the sole Contractor with regard to all provisions of the RFP, and the contract resulting from the RFP.

## 11.    Procurement Rights

The State of New York reserves the right to:
a.    Reject any and all proposals received in response to this RFP.

b.    Disqualify a bidder from receiving the award if the bidder, or anyone in the bidder's employ, has previously failed to perform satisfactorily in connection with public bidding or contracts.

c.  Waive or modify minor irregularities in proposals received, after prior notification to the bidder.

d.  Adjust any bidder's expected costs of the bid price based on a determination of the evaluation committee that the selection of the said bidder will cause the State to incur additional costs.

e.  Utilize any and all ideas submitted in the proposals received.

f   Negotiate with bidders responding to this RFP within the RFP requirements to serve the best interests of the State.

g   The State may begin contract negotiations with another bidding Contractor in order to serve the best interests of the State of New York should the State of New York be unsuccessful in negotiating a contract with the selected Contractor within 30 days.

h.  The State is not liable for any cost incurred by a bidder in the preparation and production of a proposal or for any work performed prior to the issuance of a contract.

# SECTION C

# CONTRACTUAL STANDARDS AND REQUIREMENTS

## Operations Standards

**1.    Use and Occupancy**

a. The Contractor agrees to use the Property only to manage and operate food service operations to be conducted on the 3rd floor, Kiosk on the 1st floor in the lobby, and vending machines in the Basement at the Adam Clayton Powell Jr. S.O.B. in New York, New York, in the specific space to include office and storage areas on other floors as indicated on the plans attached hereto as Appendix D hereof (the "Property"), which appendix is hereby incorporated by reference and made a part of this RFP as fully as if set forth herein. The foregoing shall hereinafter be collectively referred to as Food Service Operation. The conference/meeting room located on the 8th floor and Art Gallery located on the 2nd floor may be utilized by the contractor to meet the needs for catering service requested by a client that has reserved these rooms through the Building Management Office. Catering in these rooms will only be authorized when such a need is in concert with usual activities held in these rooms.

At no time shall such occupancy extend beyond the space shown on the above mentioned drawings. Areas of the lobby and outside plaza level that will be designated for use by the contractor for food vending cart sales as shown in Appendix D may be changed from time to time as per the OGS Building Manager's discretion.    All changes and/or alterations to the property shown in Appendix D must be approved in writing by OGS.

b. The Contractor warrants to the State that it shall use its best efforts to employ imagination, innovation, variation and decoration to stimulate and encourage use of the food services available at the Property.

c. The Contractor warrants to conduct the Food Service Operation in accordance with the highest professional standards and the most stringent sanitary practices and shall provide diners with the highest quality food and services at reasonable prices.

d. Contractor shall not assign this Permit, nor subcontract any of the food service operations there under, without the express prior written consent of the State.

**2.    Menu and Prices**

The prices and portion sizes of all food and beverages to be served in the Food Service Operation (including all catering services), as well as any changes with relation to the same, and the menus (and cycles thereof) shall be determined by the Contractor, which determinations, however, shall not be instituted without notice to and written approval of the Commissioner. The Commissioner reserves the right to review such determinations and to disallow same if it is determined that to do so would be in the best interests of the State.

**3.    Compensation**

Payments to the State shall be payable in advance on or before the first day of each monthly period to the Chief Fiscal Officer of OGS at the Gov. Nelson A. Rockefeller Empire State Plaza, Albany, New York. The assessment of any interest or late payment charges against Contractor will be determined in accordance with Section 18 of the State Finance Law. Simultaneously with each such payment, a profit and loss statement for both the applicable monthly accounting period, and accumulated periods for the contract year to date, itemized

for cafeteria sales, any approved catering, both on and off site, and any other allowable identifiable activity which generates sales hereunder, shall be provided (See Appendix E Sample Profit/Loss Statement). All checks and reports should be mailed to:

> Director of Fiscal Services
> NYS Office of General Services
> c/o Cashier
> 40th Floor - Corning Tower
> Empire State Plaza
> Albany, New York 12242

With copies of checks and reports also sent to:

> Director the Bureau of Food Services
> NYS Office of General Services
> Concourse Level, Room 130
> Empire State Plaza
> Albany, New York 12242

## 4. *Service and Utilities*

The State shall furnish and/or pay the costs of the following:

a. Suitable space for the Food Service Operation, as heretofore described.

b. Heat, air conditioning, hot and cold water, electric current, light bulbs and tubes.

c. Existing tables, chairs, fixtures, utensils and food service equipment. The repair and maintenance of such items will require a deductible be paid by the contractor as outlined in Section C Item 9 Equipment.

d. Routine integrated pest management inspection and remedial services. The Contractor is required to follow commonly applied and reasonable cleaning recommendations made by the State's Integrated Pest Management Contractor at the Contractor's own expense. Further, should the State need to do a special clean-up of the Property or any other space in the subject building as a result of Contractor's operations, then Contractor shall be liable for reimbursing the State for one hundred and fifty percent (150%) of its expenses incurred for such clean-up, as liquidated damages and not a penalty.

e. Trash removal-see item 6 of Section C.

f. Grease trap cleaning and drain maintenance.

g. Fire suppression system inspection and maintenance per code and fire extinguisher inspection and maintenance per code.

h. Kitchen Exhaust Cleaning.

## 5. *Cleaning*

a. Cleaning: The Contractor shall perform and pay all costs for the thorough cleaning of those areas of the Property devoted to and available for use and circulation by patrons and guests, together with all kitchen and food preparation areas, counters, spaces behind counters, banquet room, dining room and rest rooms and areas reserved for the use of the Contractor and its employees, inclusive of walls and ceilings. In addition, the said

b. All repairs to, and replacements of, any of the Food Service Operation facilities, equipment or fixtures therein required as a result of the tortuous acts of, or misuse or abuse by the Contractor, its agents or employees, shall be a charge directly against the Contractor, for which it does hereby accept sole legal and financial responsibility. All replacements shall become the property of the State and shall be of the same quantity, quality and style as the original.

## 9.    Equipment

a. The State shall make available to the Contractor, existing food service equipment, fixtures, utensils, and tables and chairs to be used in the Food Service Operation. Additions to existing inventory may be made at the Commissioner's discretion.

b. An inventory of all such food service equipment, fixtures, utensils, tables and chairs to be made available to the Contractor by the State, shall be given the Contractor and attached hereto (see Appendix F Inventory List and Sample Addition/Deletion Forms). The Contractor shall verify the accuracy of the inventory and execute receipts for all listed equipment, etc., and for such additional equipment as may be from time to time provided in the Commissioner's discretion.

c. The Contractor shall be solely responsible for the regular cleaning of all such equipment and fixtures. The Contractor will also be responsible for reimbursing the State for twenty percent (20%) of the State's costs incurred for the preventive maintenance of, and repairs to, the food service equipment list in Appendix F hereto. All food service equipment repairs must be authorized by the OGS Bureau of Food Services. The OGS Bureau of Food Services will invoice the Contractor for Contractor's share of such preventive maintenance and repair costs on a quarterly basis; and the Contractor shall remit payment no later than thirty (30) days after its receipt of such invoices. The assessment of any interest or late payment charges again Contractor will be determined in accordance with Section 18 of the State Finance Law.

d. The Contractor shall be solely responsible for the prompt replacement, and all costs pertaining thereto, of all such food service inventory; all replacements shall immediately become the property of the State and shall be of the same quantity, quality and style as the original.

e. Upon the expiration or termination of any contract resulting from this RFP all food service inventory and other property and facilities made available to the Contractor hereunder and all replacements thereof, shall be returned by the Contractor to the State in the same condition as received, except for ordinary wear and tear, and except to the extent the same may have been damaged or destroyed by fire, explosion or other catastrophe without the tortuous conduct of the Contractor, its agents or employees. Purchased equipment will be added to the subject inventory list and replaced equipment deleted. Contractor shall be obligated to submit inventory control sheets to the State advising of acquisitions or disposals to facilitate this function.

f. When replacing or adding equipment, written plans and specifications will be submitted to the Director of the OGS Bureau of Food Services for approval prior to purchase. Replaced OGS equipment will be turned over to and disposed of by the OGS Director of Food Service. Purchased equipment replacing OGS equipment will be added to the Contractor's inventory list and replaced equipment deleted. (See Appendix F Inventory and Sample Addition/Deletion Forms.)

g. Upon expiration or termination of the contract resulting from this RFP, the Contractor shall return to OGS the final remaining equipment and fixtures as per the inventory in the same quantity and condition as received, except for ordinary wear and tear or addition/deletion of original inventory.

areas inclusive of the dining room, furnishings and appurtenances are to be spot cleaned by Contractor, as needed, but not less than daily. Contractor shall be responsible for the cleanup and/or repair of any common areas utilized by the Contractor, including, but not limited to common areas designated in any appendices hereto.

b. The Contractor shall clean all kitchen exhaust filters, duct works, kitchen food preparation areas and equipment to be cleaned and degreased as part of its regular scheduled maintenance with solutions containing disinfectants and germicides. Said cleaning and degreasing shall include the proper disposal of all dirt, grease and other wastes.

c. All eating areas, including the banquet facility and Kiosk on 1st floor, shall be kept neat and clean. Such eating areas shall include, but not be limited to, tables, counters, seats, floors, ceilings, carpet, walls, equipment and furnishings.

d. Each rest room within the Property shall be inspected periodically. These rest rooms shall be maintained in an orderly, clean, sanitary condition, free from persistent or pervasive unpleasant odors. Plumbing fixtures, floors, walls and ceilings must be kept in an orderly, clean and sanitary condition at all times with all appropriate items provided, including, but not limited to soap, toilet paper, paper towels and feminine hygiene products. Waste disposal containers shall be provided to ensure ample capacity for disposal in rest rooms at all times.

e. The Contractor shall be solely responsible for supplying all cleaning equipment, materials and supplies needed to properly maintain and clean the Food Service Operation as required. Should the Contractor fail or refuse to clean the facilities to the satisfaction of the Commissioner, the parties hereto agree that the Commissioner shall be authorized and empowered to cause the facilities to be properly cleaned, charging the Contractor, who shall be solely liable therefore, one hundred and fifty percent (150%) of his expenses incurred for such service, as liquidated damages and not a penalty.

## 6.    Trash Removal

The Contractor shall promptly remove rubbish to the designated area in the facility at its own and sole expense, and in a manner satisfactory to the State, including all garbage, debris, and other like materials and waste arising out of or incident to its use, management or operation of the Food Service Operation. Should the Contractor fail or refuse to promptly remove such garbage, debris, and other like materials and waste to the satisfaction of the Commissioner, the parties hereto agree that the Commissioner shall be authorized and empowered to cause such removal, charging the Contractor, who shall be solely liable therefore, one hundred and fifty percent (150%) of his expenses incurred for such service, as liquidated damages and not a penalty.

## 7.    Environmental Concerns

Contractor will implement all reasonable programs which further waste minimization, waste management and recycling and energy conservation. The Contractor will maintain complete compliance with State laws, regulations and Executive Order No. 142 mandating recycling and waste reduction.

## 8.    Care and Alteration of Premises

a. The Contractor, its agents and employees, shall not mark, paint, drill into or in any way or manner deface the walls, ceilings, partitions floors or other facilities of the Food Service Operation and shall not make any alterations, additions or improvements in or to the Property without the prior written consent to such action by the Commissioner.

14

h. The Contractor shall, in addition, provide OGS with a right of first refusal for acquisition of equipment to which the Contractor holds title. Purchase prices shall be reflective of the age and depreciated value of the item.

## 10.    Capital Investments

The qualification of an item as a capital improvement shall be subject to the prior written approval of the State, as determined in its sole discretion. See Appendix Q for capital improvement purchasing request procedures. All capital improvements made by the CONTRACTOR shall be subject to determination of ownership, by the Commissioner, at time of request.

a.    The CONTRACTOR must provide legally sufficient plans and specifications, for all Capital Improvements to the State for its consideration prior to approval. The State must approve or deny such plans and specifications within thirty (30) days of submittal or such shorter reasonable time period in the case of an emergency or breakdown situation.

b.    Prior to effecting any of the capital improvements, the CONTRACTOR shall enter into agreement with the Commissioner as to the value, cost and amortization period of each proposed improvement. In no case shall Capital Improvements be amortized for a period, which extends beyond the term of any contract resulting from this RFP.

c.    In the event only that any contract resulting from this RFP is unilaterally terminated by the Commissioner with or without cause pursuant to the provisions of Section 29 hereof, the State shall pay or cause to be paid allowable unamortized principal sums advanced by the CONTRACTOR as Capital Improvements to the date of termination only. If no successor operator assumes management of the Food Service Operation and the Commissioner, because of the exercise of the Executory Clause contained in Appendix A hereto, cannot effect payment, than the CONTRACTOR's sole remedy and the State's sole liability in satisfaction of CONTRACTOR's claim for reimbursement of unamortized sums, and any interest thereon, shall be the CONTRACTOR's entitlement to ownership of such improvements to the food service operations effected by the CONTRACTOR's advancements pursuant to this section, which are personal property easily removable by the CONTRACTOR from the premises without damage or injury thereto, provided the CONTRACTOR does promptly remove same. In the case of a termination by the Commissioner with or without cause pursuant to the provisions of Section 29 hereof, the amount of the Commissioner's obligation to reimburse CONTRACTOR, or the CONTRACTOR's right to removal of equipment in the case of a non-appropriation, shall be reduced by the sum of CONTRACTOR's financial obligations up to the effective date of termination under any contract resulting from this RFP, which have not been fully discharged by such effective date of termination.    Further, in the case of termination by the Commissioner with cause pursuant to the provisions of Section 29 hereof, the amount of the Commissioner's obligation to reimburse CONTRACTOR, or the CONTRACTOR's right to removal of equipment in the case of a non-appropriation, shall also be reduced by any damages incurred by the STATE in curing the default by CONTRACTOR and/or securing a replacement contractor.

*The proposed amount for capital improvements must be included on the Bid Sheet attached as Appendix B itemized for each facility, including but not limited to administrative and construction management costs, architectural and engineering costs, construction costs, equipment and material expenditures and site plan improvements.*

## 11. Modifications, Maintenance, Repairs, Replacement and Renovations

Any modifications to premises will be performed by OGS or by a contractor approved by OGS.

The Contractor is responsible for and will assume all allowable costs for any renovations and repair and replacement, installation and removal of equipment and fixtures including window, wall and floor coverings and Contractor Trade Fixtures. Once renovations are completed and/or equipment and fixtures are installed they shall immediately become the property of the State. OGS shall be given first preference to perform renovations and/or install equipment and fixtures. In the event OGS Building Manager declines the job, the prospective contractor's qualifications will be submitted to OGS for prior approval. A list of all requested improvements to be undertaken by Contractor will be submitted in writing to OGS Building Manager for prior approval, which approval shall not be unreasonably withheld.

## 12. Hours of Service

The Food Service Operation shall be open at a minimum Monday through Friday, State holidays excepted, from the hours of 8:00 a.m. to 3:00 p.m., on all State business days, unless otherwise mutually agreed by the parties hereto. The Contractor shall have the option of opening as early as 7:00 a.m. and closing as late as 10:00 p.m. on these days. The Contractor shall have the option of operating after 10:00 p.m. weekdays and weekends, however, additional OGS' established charges will be incurred by the Contractor and shall be payable to OGS for the operation of the building for these hours. Such charges shall be in accordance with a schedule of charges established by OGS from time to time. The service shall be additionally maintained during evening hours and for special events, as may be requested by the Commissioner.

The Contractor shall have the option of operating on weekends during the hours of 7:00 a.m. and 10:00 p.m. at no extra charge. The only exception would be on weekends, which include Holidays for which the Contractor will pay OGS for charges incurred for operation of the building on these days at OGS' established rates.

## 13. Vending Stands and Machines

The Contractor shall not without the prior express written permission of the Commissioner, operate vending stands and machines in the Food Service Operation, with the exception of the 2 machines located in the basement. Furthermore, in recognition of Section 3(13) of the Public Buildings Law, the sale of newspapers, periodicals, confections, tobacco, books and other articles as the Commissioner may determine, is prohibited without the prior written permission of the Commissioner.

## 14. Staff Compliance

The Contractor is responsible for appropriately operating and responding to the needs of the customers. The Contractor must provide sufficient numbers of appropriately experienced and/or trained employees to operate the facility and auxiliary food service stations. The Contractor shall honor the request of OGS with respect to the removal or augmentation of cafeteria and auxiliary food service station staff, to the extent that they are appropriately documented and within fiscal constraints.

## 14. Rules & Regulations, Code Compliance

Contractor shall comply with all applicable Federal, State and local laws, ordinances, rules, regulations and OGS Rules for Use of the Building. In the event Contractor fails to comply, OGS shall have the option to bring its written complaint to the Contractor. Should the Contractor fail to satisfy the complaint within a reasonable time frame, OGS shall have the right to enter the premises and take whatever steps may be necessary to achieve compliance at the Contractor's expense.

## 16.  Alcoholic Beverages

In the event alcoholic beverages are requested to be served, prior approval must be granted by OGS, for which such approval shall not be unreasonably withheld.   Contractor will be required to obtain a liquor license or liquor permit, as legally appropriate, and provide a copy of such document to the OGS Building Manager and OGS Bureau of Food Services at least 7 business days prior to any function requiring alcohol.

## 17.  Inspections, Locks & Keys

OGS shall have the right to enter the premises at all reasonable hours for the purpose of making an inspection. The Contractor agrees to promptly provide OGS with keys to the premises and copies of new keys in the event that the locks are changed.

## 18.  Statements and Audits

The Contractor is obligated to provide OGS with a certified copy of the annual Profit/Loss Statement for the operation no later than one month after each  anniversary date of the  agreement resulting from this RFP. OGS shall also be permitted to audit, upon reasonable notice, Contractor's financial records pertaining to the operation.

## 19.  Catering

The CONTRACTOR's permission to cater on premises during off hours shall be subject to the CONTRACTOR's compliance with all reasonable rules and procedures established by OGS, which may be revised from time to time. In the event the CONTRACTOR needs additional space for catering outside of the CONTRACTOR's Catering Suite located on the 3rd floor, in areas such as the 8th floor meeting room, the 2nd floor Art Gallery or any other space with in the facility, the CONTRACTOR must contact the Building Manager's Office to confirm availability of this space before booking. The CONTRACTOR will be charged directly for the room rental fee. The CONTRACTOR's  provision to cater off premises, shall be subject to prior approval by the Commissioner of OGS for which any such approval shall not be unreasonably withheld.  For every event the CONTRACTOR will be obligated to submit a "Notice of Special Event" form found in Appendix M and to comply with all reasonable rules and procedures established by OGS, which may be revised from time to time.  Further, additional charges may apply, as detailed herein. The provisions found in Appendix L shall apply to all catering functions. The OGS reserves the right to require meetings to discuss the appropriateness and compliance of any event or program when it appears to be in conflict with the use of State property.

## 20.  Waiver or Breach

The waiver or breach of any of the covenants under any contract resulting from this RFP by either party shall not be deemed a waiver of any subsequent breach thereof.

## 21.  Insurance

Prior to the Delivery of Possession Date, the Contractor shall file with The People of the State of New York, Office of General Services (herein after referred to as OGS), and Certificates of Insurance evidencing compliance with all requirements contained in this contract.  Such Certificate shall be of form and substance acceptable to OGS.

Acceptance and/or approval by the OGS do not and shall not be construed to relieve Contractor of any obligations, responsibilities or liabilities under the Contract.

All insurance required by the Contract shall be obtained at the sole cost and expense of the Contractor; shall be maintained with insurance carriers licensed to do business in New York State, and acceptable to OGS; shall be primary and non-contributing to any insurance or self insurance maintained by OGS; shall be endorsed to provide written notice be given to OGS, at least thirty (30) days prior to the cancellation, non-renewal, or

material alteration of such policies, which notice evidenced by return receipt of United States Certified Mail, shall be sent to the OGS Bureau of Food Services, Empire State Plaza, Concourse Rm 130A, Albany, NY 12242 and shall name The People of the State of New York and their directors officers, agents, and employees as additional insurers thereunder.

The Contractor shall be solely responsible for the payment of all deductibles and self-insured retentions to which such policies are subject. Deductibles and self-insured retentions must be approved by OGS. Such approval shall not be unreasonably withheld.

Each insurance carrier must be rated at least "A-" Class "VII" in the most recently published Best's Insurance Report. If, during the term of the policy, a carrier's rating falls below "A-" Class "VII", the insurance must be replaced no later than the renewal date of the policy with an insurer acceptable to the Department and rated at least "A-" Class "VII" in the most recently published Best's Insurance Report.

The Contractor shall cause all insurance to be in full force and effect as of the date of this Contract and to remain in full force and effect throughout the term of this Contract and as further required by this Contract. The Contractor shall not take any action, or omit to take any action that would suspend or invalidate any of the required coverage during the period of time such coverage are required to be in effect.

Not less than thirty (30) days prior to the expiration date or renewal date, the Contractor shall supply OGS updated replacement Certificates of Insurance, and amendatory endorsements.

The Contractor, throughout the term of this Contract, or as otherwise required by this Contract, shall obtain and maintain in full force and effect, the following insurance with limits not less than those described below and as required by the terms of this Contract, or as required by law, whichever is greater (limits may be provided through a combination of primary and umbrella/excess policies):

(a)   Commercial General Liability Insurance with a limit of not less than $1,000,000 each occurrence and $2,000,000 in the aggregate. Such liability shall be written on the Insurance Service Office's (ISO) occurrence form CG 00 01 , or a substitute form providing equivalent coverage and shall cover liability arising from premises operations, independent contractors, products-completed operations, broad form property damage, personal & advertising injury, cross liability coverage, liability assumed in a contract. The limit for Fire Damage shall not be less than $100,000.

(b)   Workers Compensation, Employers Liability, and Disability Benefits as required by New York State.

(c)   Comprehensive Business Automobile Liability Insurance with a limit of not less than $1,000,000 each accident. Such insurance shall cover liability arising out of any automobile including owned, leased, hired and non owned automobiles.

(d)   Commercial Property Insurance on the Improvements covering at a minimum, the perils insured under the ISO Special Causes of Loss Form (CP 10 30), or a substitute form providing equivalent coverage, including debris removal, demolition and increased cost of construction that are caused by legal requirements regulating the construction or repair of damaged facilities, including an ordinance and law endorsement, in an amount of not less than the Full Insurable Value of the Improvements. Full Insurable Value shall mean actual replacement cost of the Improvements (exclusive of the cost of non insurable portions thereof, such as excavation, foundations and footings). The Commercial Property Insurance shall name OGS as loss payee.

(e)   Plate Glass Insurance on forms and in amounts reasonably acceptable to OGS.

19

The Contractor shall require any subcontractors hired, to carry insurance with the same limits and provisions provided herein.

If the Contractor uses, stores, handles, processes or disposes of Hazardous Materials, then Contractor shall maintain in full force and effect through the term, Environmental Impairment Liability insurance with limits of not less than $1,000,000, providing coverage for bodily injury, property damage or damage of actual, alleged or threatened emission, discharge, dispersal, seepage, release or escape of pollutants, including any loss, cost or expense incurred as a result of any cleanup of pollutants or in the investigation, settlement or defense of any claim, suit, or proceedings against OGS arising from Contractor's use, storage, handling, processing or disposal of Hazardous Materials.

If the Contractor sells, distributes, serves or furnishes alcoholic beverages, then Contractor shall maintain in full force and effect through the term, Liquor Liability Insurance with limits of not less than $1,000,000.

Waiver of Subrogation. Contractor shall cause to be included in each of its policies insuring against loss, damage or destruction by fire or other insured casualty a waiver of the insurer's right of subrogation against Landlord, or, if such waiver is unobtainable (i) an express agreement that such policy shall not be invalidated if Contractor waives or has waived before the casualty, the right of recovery against Landlord or (ii) any other form of permission for the release of Landlord.

Please direct inquiries to:    Tomlynn Yacono
OGS Bureau of Insurance
3604 Corning Tower
Empire State Plaza
Albany, NY 12242
Phone: (518) 474-4725  Fax: (518) 474-7867

## 22.    Sanitary Code Compliance

The Contractor understands and agrees that the Food Service Operation shall be operated in full compliance with the New York State Sanitary Code, and will immediately take any corrective action as may be required by the New York State Department of Health or any county or local Department of Health with jurisdiction. In the event the Food Service is closed because of violation by the Contractor of a federal, state or local law, code, rule or regulation, the contract resulting from this RFP shall be subject to immediate termination by the State. Nothing contained herein shall be deemed to bar or restrict the State from utilizing any remedy afforded it by law. A copy of any and all state, county or local Health Department inspection reports shall be forwarded to the OGS Director of Food Service within 5 days of any inspection.

## 23.    Use of Space For Meetings

The Contractor agrees to make the catering suite available on a pre-scheduled basis for occasional use by the State. For these functions, OGS will have responsibility for catering suite use and condition. Any usual rental fees shall be waived. However, any food service provided to OGS by the Contractor shall be charged to OGS. Should the contractor decline to provide such food service to OGS where requested, then OGS shall have the right to utilize a food service provider of choice for these functions.

## 24.    Booked Banquet Functions

The CONTRACTOR acknowledges that the current Contractor has booked on sight banquet functions under the current contract. The CONTRACTOR agrees that, if requested by the State, it will honor and perform any and all bookings made prior to the commencement of the term of this Contract, except such as may be reserved by the Commissioner to be performed by others. The bookings and functions shall proceed upon the terms and conditions originally agreed upon between the user groups and the then Contractor, and the CONTRACTOR shall not impose additional or further charges upon the State or any user group nor shall the CONTRACTOR be entitled to any form of compensation other than as originally contracted by the then Contractor.

## 25.    Common Areas

The Contractor shall be responsible for the cleanup and/or repair of any common areas utilized by the Contractor when necessitated by the action or failure to take action of Contractor, its officers, agents, employees, suppliers or independent contractors including, but not limited to common areas designated in any Appendices hereto.  If Contractor fails to promptly cleanup and/or repair such areas, OGS shall have the right, upon written notice to the Contractor, to use its own forces and/or contract out for same and charge Contractor 150% of cost of said services, as liquidated damages and not a penalty.

## 26.    Save Harmless Clause

The Contractor shall assume all risks of liability for the Food Service Operation and shall be solely responsible and liable for all damages and costs resulting from all accidents and injuries to person or persons or damage to property and shall covenant and agree to indemnify and hold harmless the State of New York, its officers and employees, from any and all claims, suits, causes of action and losses for injury or damage to persons or property of whatever kind and nature, arising out of or in connection with the Food Service Operation, including negligence, active or passive, or improper conduct of the Contractor, its officers, agents, employees or subcontractors, or the failure by the Contractor, its officers, agents, employees or subcontractors to perform any obligations or commitments to the State or third parties arising out of or resulting from any contract resulting from this RFP.  Such indemnity shall not be limited to the insurance coverage herein prescribed.

## 27.    Governmental Requirements

The CONTRACTOR shall procure all licenses, certificates, permits or other authorizations from all governmental authorities having jurisdiction over the operations of the Contract at the premises, which may be necessary to conduct operations.

The CONTRACTOR shall pay all taxes, import duties, licenses, certification, permit and examination fees, excise and other charges which may be assessed, levied exacted or imposed on its property, operations or occupancy hereunder, or any property whatsoever which may be received at the premises or on the gross revenues or income there from and shall make all applications, reports and returns required in connection therewith. If any bond or other undertaking shall be required by any governmental authority in connection with any of the operations of the Contract or any property received or exhibited by the Contractor at the premises, the Contractor shall furnish the same and pay all other expenses in connection therewith.

The CONTRACTOR shall promptly observe, comply with and execute the provisions of any and all present and future governmental laws, rules and regulations, orders and direction which may pertain or apply to the operation of the contractor on the premises or its occupancy of the premises.

The provisions of this Section are not to be construed as a submission by the STATE to the application to itself of such laws, rules and regulations, requirements, orders or direction of any of them.

### 28.    Executive Order 127

Executive Order Number 127 requires OGS to collect and record certain information from contractors seeking a procurement contract and to make that information available to the public. Executive Order Number 127 requires OGS to obtain identifying information on every person or organization retained, employed or designated by or on behalf of the contractor to attempt to influence the procurement process. OGS is also obligated to collect information on whether such person or organization has a financial interest in the procurement. A form entitled "Contractor Disclosure of Contacts" is set forth in Appendix P for your use. OGS must obtain information from a contractor regarding any prior findings of non-responsibility. A form entitled "Contractor Disclosure of Prior Non-Responsibility Findings" is set forth in Appendix P for your use. Further, OGS must obtain a certification from a contractor that all information provided to OGS with respect to Executive Order Number 127 is complete, true and accurate and must include a contract clause authorizing termination if it is determined that the certification is found to be intentionally false or intentionally incomplete. Through the submission of a bid, you agree to the inclusion of the certification and termination clause as required by Executive Order Number 127.

### 29.    Inconsistencies

c. In the event of any discrepancy, disagreement or ambiguity between the Contract resulting from this RFP and its appendices, the documents shall be given preference in the following order to interpret and to resolve such discrepancy, disagreement or ambiguity:

i.      The Contract and Appendix A NYS Terms and Conditions
ii.     The RFP
iii.    Appendix B - Bid Form
iv.     Appendix C - Bidders Checklist
v.      Appendix D - Plans of Property
vi.     Appendix E – Sample Profit & Loss Statement
vii.    Appendix F - Inventory Lists and Sample Addition/Deletion Forms)
viii.   Appendix G – Recommend Preventive Maintenance Program
ix.     Appendix H - Acceptable Forms of Security Deposit and Form LOC
x.      Appendix I – MWBE Goals
xi.     Appendix J - Non-Collusive Bidder's Form
xii.    Appendix K - MacBride – Non Disclosure Form
xiii.   Appendix L – Catering Provisions
xiv.    Appendix M – Application for Special Events Form
xv.     Appendix N - Executive Order 127 Requirements
xvi.    Appendix O – Sample Insurance
xvii.   Appendix P – Tenant Disclosure Form
xviii.  The Contractor's Proposal

### 30.    Termination

The Office of General Services may, upon 30 days written notice, terminate the contract resulting from this RFP in the event of the awarded bidder's failure to comply with any of the RFP's requirements, unless the awarded bidder obtained a waiver of the requirement.

In addition, OGS may also terminate the contract resulting from this RFP upon ten (10) days written notice if:

- the Contractor files a petition in bankruptcy, or insolvency

or

- the Contractor makes any arrangement or assignment for the benefit of creditors,

or

- a petition in bankruptcy or insolvency is filed against the Contractor that is not dismissed, withdrawn or otherwise stayed within ninety (90) days after filing, -    -

or

- the Contractor is adjudicated as bankrupt or insolvent

or,

- a receiver or trustee is appointed for all, or substantially all, of the property of the Contractor upon an insolvency and said receiver or trustee is not discharged or ordered removed or his appointment otherwise stayed within ninety (90) days after this appointment.

Furthermore, OGS shall have the right, in its sole discretion, at any time to terminate a contract resulting from this RFP, with or without cause, by giving thirty (30) days written notice of termination to the Contractor, and such termination shall in no event constitute or be deemed a breach of any contract resulting from this RFP and no liability shall be incurred by or arise against the Office of General Services, its agents and employees therefor for lost profits or any other damages.

# SECTION D

## 1.    Contract Fee

Proposers will submit proposals on the Proposal Bid Form attached as Appendix B to pay a contract annual fixed fee to be paid in twelve (12) monthly payments per annum for a period of five (5) years. The Proposer must also submit its bid for Capital Improvements on the Proposal Bid Form. **Please note this fixed fee does NOT include the 20% deductible for equipment repairs to be paid by the successful proposer..**

## 2.    Letter of Credit

The Contractor shall, prior to commencement of the Food Service Operation, cause to be issued to the State, and delivered to OGS Fiscal Services, from a bank acceptable to the State, an irrevocable letter of credit in form acceptable to the State (See attached Appendix I Letter of Credit Form) for any contract resulting from this RFP in the amount of $4,000.00 (four thousand and 00/100 dollars) which letter shall be security for the faithful performance by the Contractor of the terms, conditions and covenants of any contract resulting from this RFP. Nothing contained herein shall be construed to bar or restrict the State from utilizing any other remedy afforded it by law, in the event of breach or default hereunder by the Contractor. This letter of credit shall remain in effect for a minimum of three (3) months after termination of the contract. Failure of the Contractor to keep a valid letter of credit in effect shall be grounds for the State's immediate termination of any contract resulting from this RFP, without any liability on the State's part.

# SECTION E

# PLAN OF OPERATION

## 1.    *Operational Information*

Proposals must include a complete operational plan that must address the following items for  food service operation:

- Facility Concept
- Staffing Plan
- Hours of Operation
- Menus, portion sizes and pricing, including promotional schedule.
- Quality Control and Food Quality Standards
- Cleaning Standards and Schedule of all areas—include dining area, serving area, kitchen area, equipment, hoods, ducts and fans, and roto cones
- Equipment Maintenance and Repair, including On-going and Preventive Maintenance and replacement, when necessary.
- Marketing plan  for catering operation.

# SECTION F

## EVALUATION OF PROPOSALS

### a.    *Evaluation of Proposals*

The criteria have been weighted to address relative importance. The ratings will be multiplied by the weight factor to determine total points for each requirement. The maximum number of points that can be earned is 1000. The breakdown is as follows:

| | |
|---|---|
| Financial Stability | 50 Pts |
| Experience of Firm | 300 Pts. |
| Vision – Plan of Operation | 100 Pts. |
| Exceptions to the RFP | 100 Pts. |
| Completeness of Proposal | 100 Pts. |
| Proposed Fee and Capital Improvements | 250 Pts. |
| Commissioner Review | 100 Pts. |
| | |
| Total Maximum Points Allowed | 1000 Pts. |

### b.    *Evaluation Criteria and Numerical Point Structure*

### *FINANCIAL STABILITY*
Submitted documentation will be reviewed to determine the relative financial stability of your firm and it will be evaluated accordingly.

### *EXPERIENCE OF FIRM*
Submitting documents as requested with consideration given to the amount of proposer's experience in similar facilities, to include consideration of how long the firm has been providing this type of service. References should be made to cafeteria style, restaurant and concession service operations.

### *VISION - PLAN OF OPERATION*
The extent to which this information meets the goals and requirements of the RFP. This would include feasibility of proposed concept, extended hours of operation, menu and prices.

### *EXCEPTIONS TO THE RFP*
No exceptions requested will receive maximum weight. However, should the exceptions requested benefit the investment made by the State and not incur major expenses, maximum weight could apply.

## COMPLETENESS OF PROPOSAL

**Proposal** - The appearance and contents should be presented professionally.

**Cover Letter** - A cover letter must be presented with the proposal. The purpose of the letter is to obtain a written commitment from an authorized officer of the company to operate the food services under the terms set forth in the RFP should the contract be awarded to the company.

**Completeness of Response** - The proposal must address each requirement outlined in the RFP.

## PROPOSED FEE AND CAPITAL IMPROVEMENTS

The Office of General Services' financial concerns should be considered here. This should be based on the efficacy of the company's proposal to minimize potential risk to the Office of General Services while maintaining quality food at competitive prices, all within the range of an attainable proposal.

## COMMISSIONER REVIEW

This will be based upon factors which include the Evaluation Team's appraisal of the bidder's level of experience, flexibility, presentation format of the proposal, practicality of proposed changes in the operation and evaluating the suitability of these changes to the needs at the facility.

# APPENDIX A

# STANDARD CLAUSES FOR ALL NEW YORK STATE CONTRACTS

## TABLE OF CONTENTS

1.    Executory Clause

2.    Non-Assignment Clause

3.    Comptroller's Approval

4.    Workers' Compensation Benefits

5.    Non-Discrimination Requirements

6.    Wage and Hours Provisions

7.    Non-Collusive Bidding Certification

8.    International Boycott Prohibition

9.    Set-Off Rights

10.   Records

11.   Identifying Information and Privacy Notification

12.   Equal Employment Opportunities For Minorities and Women

13.   Conflicting Terms

14.   Governing Law

15.   Late Payment

16.   No Arbitration

17.   Service of Process

18.   Prohibition on Purchase of Tropical Hardwoods

19.   MacBride Fair Employment Principles

20.   Omnibus Procurement Act of 1992

21.   Reciprocity and Sanctions Provisions

22.   Purchases of Apparel

# STANDARD CLAUSES FOR NYS CONTRACTS

The parties to the attached contract, license, lease, amendment or other agreement of any kind (hereinafter, "the contract" or "this contract") agree to be bound by the following clauses which are hereby made a part of the contract (the word "Contractor" herein refers to any party other than the State, whether a contractor, licenser, licensee, lessor, lessee or any other party):

**1. EXECUTORY CLAUSE.** In accordance with Section 41 of the State Finance Law, the State shall have no liability under this contract to the Contractor or to anyone else beyond funds appropriated and available for this contract.

**2. NON-ASSIGNMENT CLAUSE.** In accordance with Section 138 of the State Finance Law, this contract may not be assigned by the Contractor or its right, title or interest therein assigned, transferred, conveyed, sublet or otherwise disposed of without the previous consent, in writing, of the State and any attempts to assign the contract without the State's written consent are null and void. The Contractor may, however, assign its right to receive payment without the State's prior written consent unless this contract concerns Certificates of Participation pursuant to Article 5-A of the State Finance Law.

**3. COMPTROLLER'S APPROVAL.** In accordance with Section 112 of the State Finance Law (or, if this contract is with the State University or City University of New York, Section 355 or Section 6218 of the Education Law), if this contract exceeds $15,000 (or the minimum thresholds agreed to by the Office of the State Comptroller for certain S.U.N.Y. and C.U.N.Y. contracts), or if this is an amendment for any amount to a contract which, as so amended, exceeds said statutory amount, or if, by this contract, the State agrees to give something other than money when the value or reasonably estimated value of such consideration exceeds $10,000, it shall not be valid, effective or binding upon the State until it has been approved by the State Comptroller and filed in his office. Comptroller's approval of contracts let by the Office of General Services is required when such contracts exceed $30,000 (State Finance Law Section 163.6.a).

**4. WORKERS' COMPENSATION BENEFITS.** In accordance with Section 142 of the State Finance Law, this contract shall be void and of no force and effect unless the Contractor shall provide and maintain coverage during the life of this contract for the benefit of such employees as are required to be covered by the provisions of the Workers' Compensation Law.

**5. NON-DISCRIMINATION REQUIREMENTS.** To the extent required by Article 15 of the Executive Law (also known as the Human Rights Law) and all other State and Federal statutory and constitutional non-discrimination provisions, the Contractor will not discriminate against any employee or applicant for employment because of race, creed, color, sex, national origin, sexual orientation, age, disability, genetic predisposition or carrier status, or marital status. Furthermore, in accordance with

29

Section 220-e of the Labor Law, if this is a contract for the construction, alteration or repair of any public building or public work or for the manufacture, sale or distribution of materials, equipment or supplies, and to the extent that this contract shall be performed within the State of New York, Contractor agrees that neither it not its subcontractors shall, by reason of race, creed, color, disability, sex, or national origin: (a) discriminate in hiring against any New York State citizen who is qualified and available to perform the work; or (b) discriminate against or intimidate any employee hired for the performance of work under this contract. If this is a building service contract as defined in Section 230 of the Labor Law, then, in accordance with Section 239 thereof, Contractor agrees that neither it nor its subcontractors shall by reason of race, creed, color, national origin, age, sex or disability: (a) discriminate in hiring against any New York State citizen who is qualified and available to perform the work; or (b) discriminate against or intimidate any employee hired for the performance of work under this contract. Contractor is subject to fines of $50.00 per person per day for any violation of Section 220-e or Section 239 as well as possible termination of this contract and forfeiture of all moneys due hereunder for a second or subsequent violation.

**6. WAGE AND HOURS PROVISIONS.** If this is a public work contract covered by Article 8 of the Labor Law or a building service contract covered by Article 9 thereof, neither Contractor's employees nor the employees of its subcontractors may be required or permitted to work more than the number of hours or days stated in said statutes, except as otherwise provided in the Labor Law and as set forth in prevailing wage and supplement schedules issued by the State Labor Department. Furthermore, Contractor and its subcontractors must pay at least the prevailing wage rate and pay or provide the prevailing supplements, including the premium rates for overtime pay, as determined by the State Labor Department in accordance with the Labor Law.

**7. NON-COLLUSIVE BIDDING CERTIFICATION.** In accordance with Section 139-d of the State Finance Law, if this contract was awarded based upon the submission of bids, Contractor warrants, under penalty of perjury, that its bid was arrived at independently and without collusion aimed at restricting competition. Contractor further warrants that, at the time Contractor submitted its bid, an authorized and responsible person executed and delivered to the State a non-collusive bidding certification on Contractor's behalf.

**8. INTERNATIONAL BOYCOTT PROHIBITION.** In accordance with Section 220-f of the Labor Law and Section 139-h of the State Finance Law, if this contract exceeds $5,000, the Contractor agrees, as a material condition of the contract, that neither the Contractor nor any substantially owned or affiliated person, firm, partnership or corporation has participated, is participating, or shall participate in an international boycott in violation of the federal Export Administration Act of 1979 (50 USC App. Sections 2401 et seq.) or regulations thereunder. If such Contractor, or any of the aforesaid affiliates of Contractor, is convicted or is otherwise found to have violated said laws or regulations upon the final determination of the United States Commerce Department or any other appropriate agency of the United States subsequent to the

contract's execution, such contract, amendment or modification thereto shall be rendered forfeit and void. The Contractor shall so notify the State Comptroller within five (5) business days of such conviction, determination or disposition of appeal (2NYCRR 105.4).

**9. SET-OFF RIGHTS.** The State shall have all of its common law, equitable and statutory rights of set-off. These rights shall include, but not be limited to, the State's option to withhold for the purposes of set-off any moneys due to the Contractor under this contract up to any amounts due and owing to the State with regard to this contract, any other contract with any State department or agency, including any contract for a term commencing prior to the term of this contract, plus any amounts due and owing to the State for any other reason including, without limitation, tax delinquencies, fee delinquencies or monetary penalties relative thereto. The State shall exercise its set-off rights in accordance with normal State practices including, in cases of set-off pursuant to an audit, the finalization of such audit by the State agency, its representatives, or the State Comptroller.

**10. RECORDS.** The Contractor shall establish and maintain complete and accurate books, records, documents, accounts and other evidence directly pertinent to performance under this contract (hereinafter, collectively, "the Records"). The Records must be kept for the balance of the calendar year in which they were made and for six (6) additional years thereafter. The State Comptroller, the Attorney General and any other person or entity authorized to conduct an examination, as well as the agency or agencies involved in this contract, shall have access to the Records during normal business hours at an office of the Contractor within the State of New York or, if no such office is available, at a mutually agreeable and reasonable venue within the State, for the term specified above for the purposes of inspection, auditing and copying. The State shall take reasonable steps to protect from public disclosure any of the Records which are exempt from disclosure under Section 87 of the Public Officers Law (the "Statute") provided that: (i) the Contractor shall timely inform an appropriate State official, in writing, that said records should not be disclosed; and (ii) said records shall be sufficiently identified; and (iii) designation of said records as exempt under the Statute is reasonable. Nothing contained herein shall diminish, or in any way adversely affect, the State's right to discovery in any pending or future litigation.

**11. IDENTIFYING INFORMATION AND PRIVACY NOTIFICATION.** (a) FEDERAL EMPLOYER IDENTIFICATION NUMBER and/or FEDERAL SOCIAL SECURITY NUMBER. All invoices or New York State standard vouchers submitted for payment for the sale of goods or services or the lease of real or personal property to a New York State agency must include the payee's identification number, i.e., the seller's or lessor's identification number. The number is either the payee's Federal employer identification number or Federal social security number, or both such numbers when the payee has both such numbers. Failure to include this number or numbers may delay payment. Where the payee does not have such number or numbers, the payee, on its

invoice or New York State standard voucher, must give the reason or reasons why the payee does not have such number or numbers.

(b) PRIVACY NOTIFICATION. (1)  The authority to request the above personal information from a seller of goods or services or a lessor of real or personal property, and the authority to maintain such information, is found in Section 5 of the State Tax Law.  Disclosure of this information by the seller or lessor to the State is mandatory. The principal purpose for which the information is collected is to enable the State to identify individuals, businesses and others who have been delinquent in filing tax returns or may have understated their tax liabilities and to generally identify persons affected by the taxes administered by the Commissioner of Taxation and Finance.  The information will be used for tax administration purposes and for any other purpose authorized by law.

(2)  The personal information is requested by the purchasing unit of the agency contracting to purchase the goods or services or lease the real or personal property covered by this contract or lease.  The information is maintained in New York State's Central Accounting System by the Director of Accounting Operations, Office of the State Comptroller, AESOB, Albany, New York 12236.

## 12.  EQUAL EMPLOYMENT OPPORTUNITIES FOR MINORITIES AND WOMEN.  In accordance with Section 312 of the Executive Law, if this contract is:  (i) a written agreement or purchase order instrument, providing for a total expenditure in excess of $25,000.00, whereby a contracting agency is committed to expend or does expend funds in return for labor, services, supplies, equipment, materials or any combination of the foregoing, to be performed for, or rendered or furnished to the contracting agency; or (ii) a written agreement in excess of $100,000.00 whereby a contracting agency is committed to expend or does expend funds for the acquisition, construction, demolition, replacement, major repair or renovation of real property and improvements thereon; or (iii) a written agreement in excess of $100,000.00 whereby the owner of a State assisted housing project is committed to expend or does expend funds for the acquisition, construction, demolition, replacement, major repair or renovation of real property and improvements thereon for such project, then:

(a)  The Contractor will not discriminate against employees or applicants for employment because of race, creed, color, national origin, sex, age, disability or marital status, and will undertake or continue existing programs of affirmative action to ensure that minority group members and women are afforded equal employment opportunities without discrimination.  Affirmative action shall mean recruitment, employment, job assignment, promotion, upgradings, demotion, transfer, layoff, or termination and rates of pay or other forms of compensation;

(b)  at the request of the contracting agency, the Contractor shall request each employment agency, labor union, or authorized representative of workers with which it has a collective bargaining or other agreement or understanding, to furnish a written statement that such employment agency, labor union or representative will not

discriminate on the basis of race, creed, color, national origin, sex, age, disability or marital status and that such union or representative will affirmatively cooperate in the implementation of the contractor's obligations herein; and

(c) the Contractor shall state, in all solicitations or advertisements for employees, that, in the performance of the State contract, all qualified applicants will be afforded equal employment opportunities without discrimination because of race, creed, color, national origin, sex, age, disability or marital status.

Contractor will include the provisions of "a", "b", and "c" above, in every subcontract over $25,000.00 for the construction, demolition, replacement, major repair, renovation, planning or design of real property and improvements thereon (the "Work") except where the Work is for the beneficial use of the Contractor. Section 312 does not apply to: (i) work, goods or services unrelated to this contract; or (ii) employment outside New York State; or (iii) banking services, insurance policies or the sale of securities. The State shall consider compliance by a contractor or subcontractor with the requirements of any federal law concerning equal employment opportunity which effectuates the purpose of this section. The contracting agency shall determine whether the imposition of the requirements of the provisions hereof duplicate or conflict with any such federal law and if such duplication or conflict exists, the contracting agency shall waive the applicability of Section 312 to the extent of such duplication or conflict. Contractor will comply with all duly promulgated and lawful rules and regulations of the Governor's Office of Minority and Women's Business Development pertaining hereto.

**13. CONFLICTING TERMS.** In the event of a conflict between the terms of the contract (including any and all attachments thereto and amendments thereof) and the terms of this Appendix A, the terms of this Appendix A shall control.

**14. GOVERNING LAW.** This contract shall be governed by the laws of the State of New York except where the Federal supremacy clause requires otherwise.

**15. LATE PAYMENT.** Timeliness of payment and any interest to be paid to Contractor for late payment shall be governed by Article 11-A of the State Finance Law to the extent required by law.

**16. NO ARBITRATION.** Disputes involving this contract, including the breach or alleged breach thereof, may not be submitted to binding arbitration (except where statutorily authorized), but must, instead, be heard in a court of competent jurisdiction of the State of New York.

**17. SERVICE OF PROCESS.** In addition to the methods of service allowed by the State Civil Practice Law & Rules ("CPLR"), Contractor hereby consents to service of process upon it by registered or certified mail, return receipt requested. Service hereunder shall be complete upon Contractor's actual receipt of process or upon the State's receipt of the return thereof by the United States Postal Service as refused or

undeliverable. Contractor must promptly notify the State, in writing, of each and every change of address to which service of process can be made. Service by the State to the last known address shall be sufficient. Contractor will have thirty (30) calendar days after service hereunder is complete in which to respond.

**18. PROHIBITION ON PURCHASE OF TROPICAL HARDWOODS.** The Contractor certifies and warrants that all wood products to be used under this contract award will be in accordance with, but not limited to, the specifications and provisions of State Finance Law §165. (Use of Tropical Hardwoods) which prohibits purchase and use of tropical hardwoods, unless specifically exempted, by the State or any governmental agency or political subdivision or public benefit corporation. Qualification for an exemption under this law will be the responsibility of the contractor to establish to meet with the approval of the State.

In addition, when any portion of this contract involving the use of woods, whether supply or installation, is to be performed by any subcontractor, the prime Contractor will indicate and certify in the submitted bid proposal that the subcontractor has been informed and is in compliance with specifications and provisions regarding use of tropical hardwoods as detailed in §165 State Finance Law. Any such use must meet with the approval of the State; otherwise, the bid may not be considered responsive. Under bidder certifications, proof of qualification for exemption will be the responsibility of the Contractor to meet with the approval of the State.

**19. MACBRIDE FAIR EMPLOYMENT PRINCIPLES.** In accordance with the MacBride Fair Employment Principles (Chapter 807 of the Laws of 1992), the Contractor hereby stipulates that the Contractor either (a) has no business operations in Northern Ireland, or (b) shall take lawful steps in good faith to conduct any business operations in Northern Ireland in accordance with the MacBride Fair Employment Principles (as described in Section 165 of the New York State Finance Law), and shall permit independent monitoring of compliance with such principles.

**20. OMNIBUS PROCUREMENT ACT OF 1992.** It is the policy of New York State to maximize opportunities for the participation of New York State business enterprises, including minority and women-owned business enterprises as bidders, subcontractors and suppliers on its procurement contracts.

Information on the availability of New York State subcontractors and suppliers is available from:

NYS Department of Economic Development
Division for Small Business
30 South Pearl St – 7th Floor
Albany, New York 12245
Telephone: 518-292-5220

34

A directory of certified minority and women-owned business enterprises is available from:

NYS Department of Economic Development
Division of Minority and Women's Business Development
30 South Pearl St -- 2nd Floor
Albany, New York 12245
http://www.empire.state.ny.us

The Omnibus Procurement Act of 1992 requires that by signing this bid proposal or contract, as applicable, Contractors certify that whenever the total bid amount is greater than $1 million:

(a) The Contractor has made reasonable efforts to encourage the participation of New York State Business Enterprises as suppliers and subcontractors, including certified minority and women-owned business enterprises, on this project, and has retained the documentation of these efforts to be provided upon request to the State;

(b) The Contractor has complied with the Federal Equal Opportunity Act of 1972 (P.L. 92-261), as amended;

(c) The Contractor agrees to make reasonable efforts to provide notification to New York State residents of employment opportunities on this project through listing any such positions with the Job Service Division of the New York State Department of Labor, or providing such notification in such manner as is consistent with existing collective bargaining contracts or agreements. The Contractor agrees to document these efforts and to provide said documentation to the State upon request; and

(d) The Contractor acknowledges notice that the State may seek to obtain offset credits from foreign countries as a result of this contract and agrees to cooperate with the State in these efforts.

**21. RECIPROCITY AND SANCTIONS PROVISIONS.** Bidders are hereby notified that if their principal place of business is located in a country, nation, province, state or political subdivision that penalizes New York State vendors, and if the goods or services they offer will be substantially produced or performed outside New York State, the Omnibus Procurement Act 1994 and 2000 amendments (Chapter 684 and Chapter 383, respectively) require that they be denied contracts which they would otherwise obtain. NOTE: As of May 15, 2002, the list of discriminatory jurisdictions subject to this provision includes the states of South Carolina, Alaska, West Virginia, Wyoming, Louisiana and Hawaii. Contact NYS Department of Economic Development for a current list of jurisdictions subject to this provision.

**22. PURCHASES OF APPAREL.** In accordance with State Finance Law 162 (4-a), the State shall not purchase any apparel from any vendor unable or unwilling to certify that:

(i) such apparel was manufactured in compliance with all applicable labor and occupational safety laws, including, but not limited to, child labor laws, wage and hours laws and workplace safety laws, and (ii) vendor will supply, with its bid (or, if not a bid situation, prior to or at the time of signing a contract with the State), if known, the names and addresses of each subcontractor and a list of all manufacturing plants to be utilized by the bidder.

EXHIBIT "B"

# Windows over Harlem

**Restaurant**
**Catering**

Dear Commissioner John C. Egan                                      April 8, 2008

Thanks for giving us a chance to express our concerns about the inability to function and carry out the mission of the contract. Although it seems as though that after airing our complaints and reading your letter, there are still doubts that we will not be able to fully execute the contract without interference until every issue is explained thoroughly. Hopefully, this is accomplished over these three pages.

In response of our meeting of January 24, 2008 and your letter of February 5, 2008, you will find samples of documents supporting our complaints that ransacked our business for the past 2 ½ years. It is our belief if these changes are not mandated and monitored properly, these issues will still resurface and continue to violate our contract. We are responding to them and hope we can get more clarification and get some consideration as to the position we find ourselves in as result of the broken contract.

The investment in new equipment for Windows Over Harlem is a positive step toward bridging some of the expenses that we have occurred in the few years on repairs for old equipment that was outdated. Most of the equipment was repaired multiple times and continues to require repair. EXHIBIT A (Repairs &Maintenances)

The $26,000.00 capital improvement which is WOH' contractual commitment could not be fulfilled because of the restraint of trade by BM as he violated the content and substance of the contract, which prevented us from fulfilling our obligation. This has to be looked at realistically on how it affected us and how are we going to recoup our losses that damaged us financially over the past 2 ½ years. We need some kind of consideration on your part to make a plan with guidelines necessary to fulfill these obligations in such a short period of time.

One of the devastation to Windows Over Harlem financial status has been the ability to carry out to our fullest capability the Catering Events which caused turmoil with our clients by having the misinterpretation and constant changes in the contract. We often had to appeal to OGS in Albany to get our special events approved. One glaring example was the denial of special event no. 1634 on the basis of Mr. Walker's email 12/6/2006. I have enclosed a copy of the client's letter of 12/5/2006. We had to appeal to Albany who eventually overruled Mr. Walker but too late for the client to hold their event as noted in a copy of their letter of 12/27/2006. Incidentally, Mr. Walker and Avatar who he noted in his email denial of 12/6/2006 appeared to be linked as noted in the announcement attached that designates Mr. Walker's home address for the Harlem Celebration Event. By the way, we are still being billed by Division BSS in the amount of $1660.40 as well as noted in your letter of 2/5/2008 although this event and others never took place. EXHIBIT B (Multiple Copies, including Mr. Walker's email, the 2 letters from "The Rally of the Republicans a foreign organization from Africa and a copy of the BSS statement.)

page 1

163 West 125 Street, 3rd Floor, New York, N.Y.  10027  212 665-4337, 665-4372

The issue about the paying $100.00 deposit to accompany the special event form is a modification of the contract effective 02/01/2007. We need to revisit the original contract. Thanks for canceling the $100.00 deposit (2/5/2008)

One of the critical issue that has to be enforced is the time-stamped of the Special Event Form. If disapproved; a signed written reason should be returned to Windows within the four days. We may need a guideline on what events can be disapproved.

There is a concern about late events. As it was mentioned in the meeting, we have abundant amount of African events and UN Diplomats who wished to have events in Harlem. Usually these events take place late evenings because persons attending these events are not able to attend early and it is also cultural. We have lost these clients because the cost of OGS after 10 pm has time restraints. Hopefully we can regain these clients if it is clearly defined what are heightened security concerns.
EXHIBIT C (10 pages included letter of bomb threat)
It is good for Windows over Harlem to be able to offer space on 2nd and 8th floors for client events. In the past when WOH inquires about these spaces, we are told it is not available or it is booked for the whole summer. On many occasions, some clients told us they didn't have to pay for some of the fees when they are booked by OGS. Some clients are not aware there's a catering facility on the premises because OGS recommends the 8th or 2nd floor for their events. Now we have clients coming to us stating that they were not told about WOH. OGS management office is recommending clients to WOH for their events. It seems as though we are going in the right direction. EXHIBIT D (4 PAGES)

We are limited to the space in the lobby but occasional other groups are booked in this lobby space. This is another way to inconvenience our clients by not having them eating at a table for a few minutes.. Presently, people are standing and eating in the lobby with no space to sit for a moment. We are willing to compromise and have 2 tables in the space near the kiosk. EXHIBIT E (2 pictures)

Our client was appreciative that their guests could park in the garage on off-hours. The parking must have guidelines on how many people can park. Last weekend, we had 23 cars and had no problem regarding space. We were assigned two parking spaces during our first contract with OGS. The staff member left so the space remained unoccupied. Presently, we need to use that space again.

We are willing to adhere to not putting A-frame in the lobby, but the BM allows others to put up their A-Frames. This is another prejudicial management decision. EXHIBIT F (6 pictures, 3 page letter, 2 page email)

Some assistance is needed for bathroom cleaning and paper stock since we are singled out as a public bathroom used by outsiders and tenants because their bathrooms are locked. There is a no public restroom posted in the lobby. We will do routine cleaning daily and OGS cleaning agency can germicide it once a week. We need a schedule of the hallway cleaning and bathroom cleaning. EXHIBIT G (1 Picture)
There have been many work orders submitted to OGS Management in reference to maintenance and repairs. The usual excuses are; we don't have materials or no plumber on sight or no response or too busy to fix it. EXHIBIT H

page 2

We will eliminate the lights in the ceiling in the executive room or have OGS re-install them   We will submit work orders.

In reference to the overnight parking in the building garage, it is harassment. You will find pictures of other vehicles with no permits or not ticketed in the garage.  The following day to justify BM actions, tickets were placed on cars.
EXHIBIT 1 ( 4 pictures)

Security charges refund acknowledged by OGS still has several factual errors where the following Event Nos. 935, 957, 1396, 1473, 1663, 1687 are listed as n/a and in red. We have proof in the form of copies of the aforesaid numbers.  We are searching for Notice of Special Event's copies 949 dated 7/9/05 (copy of 949 contract enclosed), 972 dated 8/20/05, 1428 dated 6/24/06, 1447 dated 12/16/06, 1495 dated 12/16/06 these last two events on the same day.  These events did occur.  EXHIBIT J.

After responding to the comments made at the meeting and in your letter along with samples of documentations (other documentations can be furnished by request). I hope you will consider the struggle we have been going through as a result of the Building Manager's handling of the contract.  As a Minority Business Woman who has been trying in the best interest of OGS to develop a community centerpiece who can gain the notoriety as one of the state facilities that the Governor and Lt. Governor can be proud of in Harlem. We are here to fulfill Adam Clayton Powell, Jr. Legacy, a place for the community people to meet, have their events, be proud, and eat healthy at affordable prices. EXHIBIT K

EXHIBITS L and M submitted to further substantiate the capricious and retaliatory actions of the building manager here at this Harlem State Office Building.  What does it take to receive a fair and impartial hearing from our State.  Are you saying that Administrative Rules and Procedures of OGS are superior to Contract Law?  Certainly, we at Windows are neophytes when it comes to legal interpretation; but why hasn't our complaints been investigated by those in authority charged with the protection of the rights of its citizens?

Although the above issues were mailed to several State Agencies including the Attorney General, and the Inspector General; only the Commission on Public Integrity responded and placed the matter back into the Office of General Services stating that their Agency has no jurisdiction over OGS.


Respectfully submitted,
Eva L. Frazier
by Claude Frazier

Cc:    Governor David Paterson
       Joseph Makhandal Champagne, Jr. Esquire
       Files

EXHIBIT "C"



**DANIEL D. HOGAN**
COMMISSIONER

**ROBERT J. FLEURY**
FIRST DEPUTY COMMISSIONER

**STATE OF NEW YORK
EXECUTIVE DEPARTMENT
OFFICE OF GENERAL SERVICES**
MAYOR ERASTUS CORNING 2ND TOWER
THE GOVERNOR NELSON A. ROCKEFELLER EMPIRE STATE PLAZA
ALBANY, NEW YORK 12242

**BART BUSH**
DEPUTY COMMISSIONER
REAL PROPERTY MANAGEMENT
AND DEVELOPMENT

May 26th, 2006

Eva Frazier Chief Executive Officer
Windows Over Harlem Restaurant & Catering
163 W.125th Street 3rd Floor
New York, NY, 10027

Re: Application No.1630 Use of State Property Denied

Dear Mrs. Frazier:

We are in receipt of your May 25th, 2006 letter, concerning the use of state property passed 12 a.m. In reference to Application # 1630, submitted to the OGS office on Wednesday May 24th 2006 for approval, the application was denied based on the request to host the event to 4a.m. Information concerning this event was submitted on May 26th 2006.

On Wednesday April 19th, 2006 an email was sent to Willie Walker, Richard Gallagher and Vincent Brewer suspending all facility events passed 12a.m., due to the problems incurred on April 14th, 2006 (Applications #1365 and 1468). As a result of those events, Willie Walker and I met with Glen and informed him that all events passed 12a.m. were to be suspended. It was understood and agreed to by all.

As per recent events on Thursday May 25th, 2006 the facility area had received a Bomb Threat and we have been forced to raise our security level to a Category 3. All activities and events will conclude at 10p.m.

In reference to the meeting on Thursday May 25th, 2006 Mr. Walker had to respond to tenant emergencies due to the level of activities caused by the threat. Both Glen and I have met several times after April 19 concerning applications requesting the use of state property passed 12a.m. The event on May 13th, 2006, was originally requested for 4a.m. Glen resubmitted Application # 1390 for 12a.m. and was approved on May 12th, 2006, one day before the event.

NO POLICE REPORT OF ANY BOMB THREAT ON FILE☐
HOME LAND SECURITY NOT NOTIFIED☐
BUILDING NOT EVACUATED☐

Page 2
Eva Frazier
May 26, 2006

Please advise your clients that all events must conclude by 12a.m. As stated above, we are currently at a Security Level 3. For Memorial Weekend, all facility usage and activities must be concluded by 10p.m. until further notice.

Sincerely
Eric Miller Public Manager 2

cc:    Willie Walker